CONSOLIDATED ENGINE STOP CO. v. LANDERS, FRARY & CLARK.

(Circuit Court, D. Connecticut.    March 18, 1907.)

No. 1,212.

PATENTS—INFRINGEMENT—THROTTLE VALVE.

The Stannard patent, No. 509,334, for an improvement in throttle valves, consisting of an electrically controlled automatic engine stop, if not anticipated, is limited by the prior art to the precise structure shown. As so construed, *held* not infringed.

In Equity.    On final hearing.

Emerson R. Newell, for complainant.
Edward S. Beach, for defendant.

PLATT, District Judge.    This is a bill in equity alleging infringement of complainant's Stannard patent, No. 509,334, granted November 21, 1893, for "Improvements in Throttle-Valves."    What we really have to deal with is an electrically controlled automatic engine stop.

Claims 1 and 2 are in issue, viz.:

"(1) The combination of a suitable shell or valve body, provided with an opening for the passage of steam, a shut-off plug, b, having a portion, c, arranged therein, a passageway, p, in the shell to allow the steam to enter the opening between the screw cap, r, and the plug, b, means arranged to open and close the outlet from the chamber formed between the portion, c, and the screw cap, y, whereby the steam upon the opening of said outlet is allowed to operate to carry the body of the plug across the steamway, and close the valve, substantially as and for the purposes stated.

"(2) The combination of the shell, a, a plug, b, having a disk, c, arranged therein and having an opening for the passage of steam between the parts, b, and c, a plug-cock, f, mounted in one end of the valve body, a steam-way, p, formed in the wall of the valve body at the opposite end portion, a lever, g, mounted upon the plug, a lever, h, pivotally mounted adjacent thereto, a weight arranged upon the lever, h, a latch arranged to hold the lever, h, in its raised position, and means to move said latch and release the lever and allow it to fall by gravity and engage the lever, g, thereby turning the plug, substantially as and for the purposes stated."

The defenses are:    (1) Invalidity of the patent, based on the insufficiency and defectiveness of the specifications as a whole.    (2) Invalidity of each claim in suit, based on its ambiguity and nebulosity, and also on its invalidity in view of the art.    (3) Noninfringement. It is not deemed necessary to go further into this matter than may serve to show, in a very general way, what must, in any event, be the final conclusion upon the bill itself.

The art prior to Stannard shows automatic engine stops having the same general purpose as that claimed by him.    The best reference in the treatment of steam is Tate, 301,744, July 8, 1884.    If the pressure of water is enough like the pressure of steam, so that automatic stops in pipes carrying one are fair references when discussing stops applied to pipes carrying the other, then Graves, 358,775, of 1887, is very important.    The patentee says that his device may be applied to shutting off "steam, air, gas, or water" (line 28, p. 1), and therefore he ought not to object to the citation of the Graves patent.    With the art in view, one is forced to believe that the claims of this patent, if they have any validity, must receive a limited and narrow construction.

· It is admitted that the "passageway, p," is an essential element in the combination. In the only device ever built in attempted compliance with the disclosure of the patent the "passageway, p," was as absolutely lacking as it is in the drawings filed with the specifications. The only way steam could get between the screw cap and the plug, and so balance the valve, was by leaking through on account of the loose fit. Stannard in the patent in suit was not the first to present a construction showing an emergency valve, which by a push-button mechanism could be released so as to close the valve by steam pressure, but it is insisted that no prior combination provides a structure containing a valve which must stay open until the need for closing it arises, and then in the emergency must and will shut and stay shut. The reason for this is said to be because by the use of the "passageway, p," some of the steam as it passes through the main steamway is diverted to the rear of the plug, and thereby presents equal pressure upon either side, thus balancing the plug and maintaining it in an open condition until removal of steam from the other side of the plug overbalances the pressure, thus forcing the valve into a closed position and keeping it there. It is a curious thing that the "passageway, p," although mentioned in the claim and referred to in the specifications, cannot be found in the drawings, and it is still more curious that the only structure ever attempted under the patent had no "passageway p," at all. Despite its absence in both, it is claimed that the structure in question, which, by the way, was the only one ever made, was successfully operated for some months. But this was long ago, and not even remnants remain to tell their story. Furthermore, if all that is claimed about it be true, we are forced to the final conclusion that the "passageway, p," is not the essential thing which controls the utility of the patented structure, in which event the Tate 1884 patent gains anticipatory force.

With the Tate 1884 patent, and the Graves patent in mind, the patentee comes into this dilemma. If the "passageway, p," is not an essential, then Tate must have shown him about all that he discloses. If the "passageway, p," is essential, then we find in Graves, Fig. 1, the passage, E, which carries the water to the chamber, F, of the valve motor. From there it gets into chamber, M; thus balancing the valve. By reducing the pressure in chamber, M, the valve is overbalanced by the pressure on the other side. Graves accomplishes this in substantially the same way that Stannard does.

Complainant says that Tate's was not a safe automatic stop, and that the patent in suit discloses one. It is strange that one so sure and safe should have lain dormant since 1893, with no more exploiting than the attempt, already spoken about, to produce something without the "passageway, p," because it was cheaper to trust a "loose fit" than to drill a channel in hard metal. I am satisfied that, if Stannard added anything to human knowledge, it is found in the specific construction which his claims call for. Here again let us confine ourselves to "passageway, p." That must be an element distinct from and additional to the vertical steam way of the Stannard construction. It is contended that the place marked "p" on defendant's construction is its equivalent. That place is the main steam way of defendant's

construction, well known in double poppet-valves, and, even if it serves double duty and assists in balancing the valve, it cannot be strained into offering an equivalent for the mysterious "passageway, p," of the patent in suit.

Defendant's construction follows the Locke patent, 812,279, February 13, 1906. That fact, of course, does not control, but when we find that a structure made thereunder has four essential factors, to wit, the main valve, the fluid pressure motor, the auxiliary controlling valve, without which the first two are inoperative, and an electromagnet detent, all of which in combination offer a novel structure with a new mode of operation, which can easily be differentiated from the possibly valid construction of the patent in suit, it is impossible to detect infringement.

Let the bill be dismissed.