Frank G. ROBLES, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 16716, 16717.

United States Court of Appeals
Ninth Circuit.

June 7, 1960.

Rehearing Denied July 26, 1960.

Frank G. Robles, Tucson, Ariz., in pro. per.

Jack D. H. Hays, U. S. Atty., Michael A. Lacagnina, Mary Anne Reimann, Asst. U. S. Attys., Tucson, Ariz., for appellee.

Before HAMLIN, JERTBERG and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Appellant was convicted on four of seven counts in an indictment charging him with knowingly and willfully falsifying certain documents within the jurisdiction of a department or agency of the United States (18 U.S.C.A. § 1001) [1] and also of two criminal contempts committed in the presence of the court during the course of the trial. The appeals from both convictions are consolidated. Appellant assigns numerous errors, none of which have any merit either in fact or

law, and this perhaps can be explained in part by the fact that the appellant, a layman, voluntarily acted as his own lawyer, at the trial and on these appeals.

The indictment generally charged appellant with knowingly and willfully falsifying "contracts of employment" and "affidavits of support" which were submitted to immigration officials of the State Department for the purpose of gaining permission for Mexican nationals to enter and reside in the United States. These documents were purportedly signed by citizens of the United States who certified they would provide employment or support for the aliens sufficient to prevent them from becoming public charges while in this country. Appellant's name appeared as a notary public on the documents in question; he was charged with falsifying those documents and notarizing the signatures of United States citizens appearing thereon with the knowledge that the signatures were false.

Appellant makes eleven specifications of error which for convenience will be treated under three general headings.

*First.* Appellant urges that it was error for the court not to read the entire indictment to the jury at the beginning of the trial, that there was a variance between the indictment and proof adduced at the trial, that there was no proof that the allegedly false documents were "material" as required by Title 18 U.S. C.A. § 1001, and that it was error to permit the government's handwriting expert to merely state his conclusions as to the genuineness of signatures appearing on the disputed documents before they were admitted in evidence.

 Considering these points in the order stated, it is well settled that the jury must be fairly apprised of the nature of the charges against the defend-

1. Section 1001 of Title 18 provides as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

ant, but this does not necessarily require a reading of the indictment to the jury either in whole or in part. Gallot v. United States, 5 Cir., 1898, 87 F. 446; Norman v. United States, 6 Cir., 1939, 100 F.2d 905; Nick v. United States, 8 Cir. 1941, 122 F.2d 660, 138 A.L.R. 791. Here, after the jury had been impanelled and sworn, the district judge explained in detail the allegations appearing in two of the counts in the indictment and advised the jury that except for names and dates the substance of the remaining counts was identical; in addition, the parties themselves explained and commented on the allegations comprising each of the counts at length in the course of their opening statements to the jury.

 The assertion that there is a variance between the indictment and the proof no doubt results from appellant's misunderstanding of the crime created by 18 U.S.C.A. § 1001 and of its essential elements. He argues that the documents in question were not proven to "meet the legal tests of contracts" and that as a result there was a "variance" between the indictment and proof. In order to constitute a commission of the crime created by the statute where it is charged that a written instrument was used, the proofs relating to the instrument need only establish beyond a reasonable doubt that the accused knowingly and willfully made or used "any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry." The fact that the indictment characterizes the writing as a "contract" or "affidavit" does not require proof that it is such. Weinstock v. United States, 1956, 97 U.S.App.D.C. 365, 231 F.2d 699; Ebeling v. United States, 8 Cir., 1957, 248 F.2d 429.

 The same misconception is true of the "materiality" required, for appellant argues that the documents must be proven to have actually influenced the immigration officials in deciding whether to admit the aliens in question. Yet the test is not whether the instrument actually influenced or caused a department or agency of the United States to act, but rather "whether the false statement has a natural tendency to influence, or was capable of influencing the decision of the tribunal making the determination required to be made." Weinstock v. United States, supra, 231 F.2d at page 701. See also, United States v. Coastal Contracting & Engineering Co., D.C.Md.1959, 174 F. Supp. 474.

 There was evidence which the jury must have believed that the documents described in the indictment were of the required sort. Mrs. Bullock, Vice-Consul of the State Department stationed at Nogales, Mexico, testified that before a visa permitting entry into the United States would be granted, some proof or showing was required to the effect that the applicant would not become a public charge, and as a result the Department oftentimes relied upon writings such as these in making its decision in connection with applications for visas.

Appellant similarly misunderstands the function of a handwriting expert and the purpose for which his testimony may be used. The disputed signatures here were those of appellant, appearing as a notary public on the documents, and those of the sponsors of the alien applicants. The record discloses that the witness, after his qualifications as an expert had been established to the satisfaction of the court, compared the signatures on the disputed documents with specimen signatures, previously admitted in evidence, of appellant and the purported sponsors; he was then allowed to state his opinion that the signatures of appellant on the disputed documents had been made by him and were genuine, but that the signatures of the sponsors likewise appearing on the documents were not those of the persons who had made the corresponding specimen signatures and were spurious.

 It is well settled that " * * * an expert in handwriting may testify and state his opinion as to whether different documents or signatures were written by the same person or are similar or dissimilar in respect of handwriting

* * * or whether a particular handwriting is genuine or disguised. * * " 23 C.J.S. Criminal Law § 863, p. 72; Neall v. United States, 9 Cir., 1902, 118 F. 699; Rinker v. United States, 8 Cir., 1907, 151 F. 775; Fuston v. United States, 9 Cir., 1927, 22 F.2d 66. The procedure followed by the court below being proper, there was no error in the admission of this evidence.

■ Appellant also argues that it was error for the lower court to allow any testimony in regard to the disputed documents, including that of the expert, before they were admitted in evidence. The plain answer to this is that the testimony was necessary as part of the foundation required to properly identify and finally admit the documents as the allegedly false "contracts" and "affidavits" described in the allegations of the indictment. Hartzell v. United States, 8 Cir., 1934, 72 F.2d 569; Hass v. United States, 8 Cir., 1937, 93 F.2d 427.

■ *Second.* Appellant urges that the court unduly restricted his cross-examination of the prosecution's witnesses, that it did not consider appellant's requested instructions to the jury or inform him of its own instructions in time to permit appropriate and adequate objection, and that the court committed prejudicial error by "holding defendant, acting as his own counsel, in criminal contempt * * * while in the presence of the jury * * *."

We have carefully read the record and to use the apt language of the Supreme Court in Glasser v. United States, 1941, 315 U.S. 60, 83, 62 S.Ct. 457, 470, 86 L.Ed. 680, are thoroughly convinced that:

> "The alleged undue limitation of cross-examination merits scant attention. The extent of such examination rests in the sound discretion of the trial court. Alford v. United States, 282 U.S. 687 [51 S.Ct. 218, 75 L.Ed. 624]. We find no abuse of that discretion."

The record shows that appellant was allowed to offer his requested instructions, that the court considered them and informed appellant of the action taken on those instructions prior to his argument to the jury, and that appellant was given the opportunity to make objections before the jury retired, clearly following the procedure required by Rule 30, Federal Rules of Criminal Procedure, 18 U. S.C.A.[2]

■ The same lack of factual support is true of appellant's contention that he was prejudiced as a defendant because the court "held him in contempt" in the presence of the jury. After the incident occurred for which appellant was cited, the court simply made the following observation: "Mr. Robles, I have instructed you not to make another statement like that. I can deal with the statement you have made a little later on." The trial then continued without interruption or any particular emphasis being directed to the improper remarks of the defendant; it was not until the trial recessed for the day and the jury excused that the court informed appellant that he was found guilty of contempt, and it was not until after the trial was completed that appellant was formally adjudged in contempt. The above statment admonishing appellant and expressing the court's intention to take some action "later on" was not by itself prejudicial to appellant. Battle v. United States, 1908, 209 U.S. 36, 28 S.Ct. 422, 52 L.Ed. 670; United States v. Echeles, 7 Cir., 1955, 222 F.2d 144; Abbott v. United States, 5 Cir., 1956, 239 F.2d 310; Shelton v. United States, 5 Cir., 1953, 205 F.2d 806.

2. Rule 30, Federal Rules of Criminal Procedure, provides in pertinent part as follows:
"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury * * *. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict * * *. Opportunity shall be given to make the objection out of the hearing of the jury."

■ *Third.* Appellant urges several points in regard to the two contempt convictions, but before considering those points, we shall first look to the facts recited in the lower court's certificate and order, filed pursuant to Rule 42(a), Federal Rules of Criminal Procedure.[3]

From the certificate it appears that both were direct contempts occurring during the cross-examination of government witnesses. The first occurred after appellant approached the witness and, while standing close by, continually interrupted; although admonished several times by the court to resume his seat to permit the witness to complete his answer, he refused to do so; thereupon the court sent the jury out and again ordered appellant to take his seat, which he finally did. The second occurred after the court had sustained objections to many, although not all, of appellant's questions in which he attempted to show through the witness how the local government and police department were trying to convict him of false charges; although the court admonished appellant not to "testify" himself by bringing in extraneous and wholly immaterial facts through his questions, appellant nevertheless asked the following question for which he was cited:

"Are you aware that the reason you brought that document to this court is because this is not a trial for the charges in the indictment but a political masquerade?"

After careful review of these facts, undisputed by appellant, it is apparent to us that the trial judge was wholly justified in adjudging appellant guilty of contempt and clearly did not abuse his discretion. See Hallinan v. United States, 9 Cir., 1950, 182 F.2d 880.

The points urged in regard to the contempt convictions are: that appellant was entitled to, but was not afforded, a jury trial, that the sentence for contempt was too severe, and that the sentence is uncertain because it does not delineate the particular sentence for each contempt.

■ Appellant was not entitled to a jury trial in light of the plain language of Rule 42(a), Federal Rules of Criminal Procedure, which sanctions summary punishment for direct contempt committed in the presence of the court. The power to impose summary punishment has long been recognized as proper and necessary to insure the orderly functioning of courts of law:

"* * * it was competent for the circuit court, immediately upon the commission, in its presence, of the contempt * * * to proceed upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form."

Ex parte Terry, 1888, 128 U.S. 289, 309, 9 S.Ct. 77, 81, 32 L.Ed. 405; Cooke v. United States, 1925, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767; United States v. Sacher, 2 Cir., 1950, 182 F.2d 416, affirmed 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717; MacInnis v. United States, 9 Cir., 1951, 191 F.2d 157.

■ There is no statute providing punishment for contempt,[4] and the severity of a sentence is left to the sound discretion of the trial court; we cannot say, under the circumstances here presented, that the six months' sentence for both contempts is excessive. See Shibley v. United States, 9 Cir., 1956, 236 F.2d 238; United States v. Brown, 2 Cir., 1957, 247 F.2d 332; Hallinan v. United States, supra.

---

3. Rule 42(a), Federal Rules of Criminal Procedure, provides as follows:
"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

4. The punishment for contempt is left to the discretion of the court under 18 U.S.C.A. § 401, which grants to federal courts the "* * * power to punish by fine or imprisonment, at its discretion, such contempt of its authority * * * as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice * * *."

The failure to indicate a specific sentence for each contempt could create uncertainty were it not for the clear and express intention of the trial judge. See Holloway v. United States, 1951, 89 U.S.App.D.C. 332, 191 F.2d 504. At the time the sentence was pronounced in court and later in the order of contempt itself, the court found appellant guilty of two contempts and sentenced him to imprisonment for six months. We think this demonstrates the court's intention to sentence appellant to a *total* of six months for both offenses, and whether this means that there were two six months' sentences running concurrently, or two lesser sentences running consecutively and aggregating six months, the court's intention, and ultimate certainty of the total sentence imposed, clearly appear. It is only where there is a doubt as to the total sentence to be served that the failure to specify individual sentences creates a fatal uncertainty, and while specific sentences here might have been a better procedure to follow, the failure to do so does not require us to reverse and remand the case for proper sentencing. United States v. Karavias, 7 Cir., 1948, 170 F.2d 968; Morrison v. Hunter, 10 Cir., 1947, 161 F.2d 723; McDowell v. Swope, 9 Cir., 1950, 183 F.2d 856.

Moreover, where a general sentence is imposed upon a conviction for more than one offense, and all offenses are supported by substantial evidence, the sentence is valid if it does not exceed the aggregate which could be imposed for all. McKee v. Johnston, 9 Cir., 1939, 109 F.2d 273; McDowell v. Swope, supra; Morrison v. Hunter, supra; Jones v. Hill, 3 Cir. 1934, 71 F.2d 932. The "aggregate" here is not expressed by statute, but controlled by the limits of judicial discretion, and the punishment meted out, we think, is well within the aggregate of the sentences which the court might have properly imposed.

The further contentions made by appellant based on bias and prejudice of the trial judge are utterly unfounded and do not warrant discussion. Far from being jeopardized by bias or prejudice, appellant's liberty and constitutional rights were zealously safeguarded.

Judgment affirmed.