**John W. MARTIN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18356.**

United States Court of Appeals
Ninth Circuit.

Aug. 19, 1964.

946

Thomas J. O'Donnell, Las Vegas, Nev., for appellant.

John W. Bonner, U. S. Atty., Robert S. Linnell, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before JERTBERG and DUNIWAY, Circuit Judges, and JAMESON, District Judge.

JERTBERG, Circuit Judge.

This is the second appearance of this case in this court. Earlier, following trial to a jury, the defendant was convicted of the charge set forth in the indictment. Appellant appealed from the judgment of conviction imposed upon him, and while the appeal was pending the government, joined in by appellant,

moved for summary reversal of the judgment and remand for new trial on grounds that the Assistant United States Attorney who prosecuted the case had at one time, prior to the filing of the indictment, appeared as attorney for one of the co-conspirators. This court reversed the judgment of conviction and remanded the case to the district court for a new trial. The present appeal is from the judgment of conviction imposed following the guilty verdict returned by the jury in the new trial.

The indictment is in one count and charges a conspiracy to violate the Mail Fraud Statute, 18 U.S.C. Sec. 1341,[1] in violation of 18 U.S.C. § 371, which in pertinent part provides:

"If two or more persons conspire either to commit an offense against the United States, * * * and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. * * *"

In substance the indictment charges the appellant and other co-conspirators conspired to use the United States mail for the purpose of executing a scheme to defraud and to obtain money and property from investors in securities, to wit: investment contracts with F & M Land Development Company, a Nevada partnership, and investment contracts with Silver State Farms, Inc., a Nevada corporation; that said investment contracts provided that the conspirators in exchange for money and property of the investors, would undertake to locate and make application for entry on parcels of government owned real estate pursuant to the Desert Land Act [43 U.S.C. §§

1. "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,-000 or imprisoned not more than five years, or both."

321–339],[2] and to secure for the investors a lease agreement on such property whereby the lessee, at no cost to the investor, would place the investors in Desert Land Entry under cultivation and would perform all requirements of the Desert Land Act so as to enable the investor to perfect title to and obtain a government patent on the said Desert Land Entry;

That as a part of and in furtherance of such conspiracy, the conspirators would organize the F & M Land Development Company, a partnership above mentioned, and to cause such partnership to be dissolved and thereafter organize and control the Silver State Farms, Inc.; that the conspirators would offer and sell to investors the investment contracts of said partnership and said corporation;

That in furtherance of said conspiracy, conspirators would prepare and disseminate to investors, brochures and other literature, and by such means and oral statements would make false representations, knowing the same to be false;

That such false representations were in substance: that an abundance of water was available on the offered tracts of land; that said lands had been proven for growing crops; that after a five year period said tracts of land would have a value from thirty to fifty times the acquisition cost; that the partnership was an established business, owned and operated by respected businessmen of Nevada; that if the applications for desert land were denied the money of the investors would be refunded; that the government had found sufficient water on the tracts of land for agricultural purposes; that the conspirators had already subscribed for investors on 60,000 acres in the "Lake Valley Tract" and that farms were already successfully operating on said tracts; that the offered tracts of land in "Spring Valley" had sufficient water for irrigation purposes and with such irrigation, high yields of crops had been grown;

That in furtherance of said conspiracy the conspirators concealed from and omitted to inform the investors that the conspirators had no proof that ample water for agriculture was available on any of the tracts of land; that most applications for Desert Land Entry in the "Lake Valley Tract" had been denied by the government because said tracts were untested areas for agriculture with insufficient available water; and that the conspirators possessed neither sufficient capital or equipment to carry out the terms of said investment contracts.

As overt acts in addition to the foregoing, the indictment alleges: Appellant and a co-conspirator organized the partnership above mentioned; that appellant and other co-conspirators organized the corporation above mentioned; that one of the conspirators caused a letter to be deposited in the United States mails, addressed to named persons in San Francisco, California; that one of the co-conspirators executed a power of attorney to appellant; that one of the conspirators and appellant had a conversation with designated other persons named in the indictment.

The case comes before us on a large record. The trial consumed 21 trial days; over 132 documents were received in evidence, 27 witnesses testified on behalf of the government, and the reporter's transcript of testimony exceeds 2740 pages.

Following conviction, the appellant was sentenced to the custody of the Attorney General for imprisonment for a period of two years on condition that he be confined to a jail type institution for a period of five months with the remainder

2. This Act makes it lawful for a citizen, upon payment of twenty-five cents per acre, to file a declaration under oath in the district wherein the desert land is situated that he intends to claim a tract of desert land by conducting water upon the same within a period of three years thereafter, subject to the provisions contained in said Act, and provides for issuance of Patent on final proof in the manner and on the terms and conditions therein set forth.

of the sentence suspended under normal probationary conditions.

Before discussing appellant's assignment of errors, we wish to call attention to certain provisions contained in Rule 18, subd. 2 of the Rules of this Court. Rule 18 provides:

"2. This brief shall contain, in order here stated—

"(a) * * *

"(b) * * *

"(c) A concise statement of the case, presenting the questions involved and the manner in which they are raised, with record references supporting each statement of fact or mention of trial proceedings.

"(d) In all cases a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. When the error alleged is to the admission or rejection of evidence the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found. When the error alleged is to the charge of the court, the specification shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused, together with the grounds of the objections urged at the trial. * * *

"(e) A concise argument of the case (preferably preceded by a summary), exhibiting a clear statement of the points of law or facts to be discussed, with a reference to the pages of record and the authorities relied upon in support of each point. * * *

"(f) Where exhibits are a part of the record, counsel for appellant in an appendix to his opening brief shall set forth in table form in adjoining columns page references to the record where the exhibits were identified, offered and received or rejected as evidence.

"(g) * * *"

■ While appellant specifies in his assignment of errors sixteen errors of the District Court many are repetitive. Furthermore, there is almost a complete failure to conform to the quoted provisions of Rule 18, subd. 2(d). The burden of showing error is on the appellant and we are not required to search the lengthy record in this case for possible error. To the extent that we omit from this opinion discussion of some of the errors specified by appellant, such omission results either from deficiencies of appellant's brief or because we find that such specifications lack merit.

We reduce the specifications of error to the following categories, which we will discuss ad seriatim:

1. Failure of the District Court to dismiss or quash the indictment because no evidence of the offense set forth in the indictment was presented to the Grand Jury, or, in the alternative to order production in court of the minutes of the Grand Jury.

2. That the new trial was prejudicially tainted by the fact the Assistant United States Attorney who prosecuted the case on the first trial had appeared as attorney for one of the co-conspirators.

3. Failure to read the indictment to the jury.

4. Errors in the admission of exhibits.

5. Insufficiency of the evidence to support the jury verdict.

During the course of the government's case, appellant's counsel inquired of each of nineteen government witnesses whether such witness had appeared and testified before the Grand Jury which returned the indictment, or furnished documents to that body. All of them answered in the negative. No such inquiry was made of five other government witnesses. The record does not disclose whether any of the five appeared before the Grand Jury. Counsel for appellant

asserted to the District Court that none of the witnesses to be called on behalf of the appellant had appeared before the Grand Jury.

Upon such state of the record, appellant moved the court to dismiss the indictment on the ground that no evidence of the offense set forth in the indictment was presented to the Grand Jury. Alternately, appellant moved the court for an order requiring the production of the minutes of the Grand Jury.

The District Court denied both motions.

Appellant did not contend that the indictment was irregular on its face, or was not returned by a legally constituted Grand Jury, or that there were other irregularities in the Grand Jury proceedings. His sole contention is that there was no competent evidence before the Grand Jury.

■ The well-established rule is that an indictment, regular on its face, returned by a legally constituted and unbiased Grand Jury is presumed to be founded on competent evidence. A heavy burden is placed upon one who seeks to overcome such salutary presumption. Appellant's showing is clearly insufficient to do so.

The Supreme Court, in Costello v. United States, 350 U.S. 359, at 363, 76 S.Ct. 406 at 408, 100 L.Ed. 397 (1956), referred to its earlier opinion in Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 where the indictment was supported, in part, by incompetent evidence and yet held valid. The Court stated:

"The same thing is true where as here all the evidence before the grand jury was in the nature of 'hearsay'. If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

■ Appellant's need for the minutes of the Grand Jury was to show, if he could, that no witness appeared before the Grand Jury. In the alternate motion appellant did not set forth any other particularized and compelling need for the production of the minutes of the Grand Jury, e. g., the need of the Grand Jury transcript at the trial for purposes of cross examination, or to impeach a witness, or to test his credibility, or to show bias on the part of the Grand Jury in returning the indictment, or for any other reason required by the ends of justice. In our view the need shown for the minutes of the Grand Jury is insufficient to outweigh the policy of maintaining secrecy of Grand Jury proceedings. We find no abuse of discretion on the part of the District Court. See: Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); United States v. Procter & Gamble, 356 U.S. 677, 7 S.Ct. 983, 2 L.Ed 2d 1077 (1958); Carrado v. United States, 93 U.S.App.D.C. 183, 210 F.2d 712 (1954), c. d. 350 U.S. 938, 76 S.Ct. 310, 100 L.Ed. 819 (1955).

As noted at the beginning of this opinion, an earlier conviction of appellant was summarily reversed by this court because the Assistant United States Attorney who prosecuted the case had represented one of the co-conspirators, as an attorney, in connection with the transactions set forth in the indictment and had appeared as attorney for such co-conspirator at a preliminary hearing on such charges. It appears that during the first trial said co-conspirator's case was severed from the trial of the remaining conspirators because of the attorney-client relation-

ship which had existed between the prosecutor and such co-conspirator. Upon such severance, the remaining defendants moved for a mistrial on the ground that the prosecutor was disqualified from further prosecution of the case, and that there was an unreconcilable conflict of interest which prevented a fair trial. The District Court denied the motion for an order of mistrial. Following our summary reversal of the judgment of conviction at the first trial, the prosecutor on the first trial severed his connection with the United States Attorney's office and the new trial, was prosecuted by another attorney on the staff of the United States Attorney. It is undisputed that the transcript of the testimony taken on the first trial was read in its entirety by the government attorney who prosecuted the new trial, in preparation for the prosecution thereof.

Appellant contends that the "taint" which caused the summary reversal following the first trial likewise infects the new trial and that the ends of justice require a reversal and a dismissal of the indictment. Appellant's thesis appears to be that all of the witnesses at the new trial "must have as a matter of necessity, had conferences with the prosecutor of the first trial," and that due to the attorney-client relationship between the prosecutor of the first trial and co-defendant at that trial "it is conceivable" that such prosecutor was in possession of privileged matter which was used in the prosecution of appellant in the new trial, and that such prosecutor "may have either knowingly or inadvertently disclosed some of the privileged matter to the witnesses and these witnesses in turn may have unconsciously or even consciously utilized this information when on the witness stand in the second trial."

The point now urged by appellant was not presented to the District Court.

■ We note that appellant's claim that the new trial was tainted is extremely hypothetical and conjectural. To uphold this specification of error would require much speculation and surmise on

our part. Appellant's showing is clearly insufficient to justify us in holding that the circumstances set forth in his claim of error deprived appellant of a fair trial.

■ During the presentation of the government's case and after several witnesses had testified, appellant moved the District Court for an order of mistrial on the ground of the failure of the District Court to read the indictment to the jury after it had been sworn. No prior request had been made by appellant for the reading of the indictment. No objection was made by the appellant to the failure of the District Court to read the indictment. The record reveals that the District Court explained the substance of the indictment to each of two venires of jurors which had been summoned to hear the case. At the time the motion for an order was made, the District Court offered to read the indictment to the jury, but appellant rejected such offer. The indictment was read in its entirety to the jury in connection with the instructions given to the jury. In addition the opening statement to the jury by government counsel contained some explanation of the charge appearing in the indictment. We are satisfied that the members of the jury were fairly apprised of the nature of the charge against the appellant and the error, if any, on the part of the district court is harmless. In Robles v. United States, 279 F.2d 401 (9th Cir. 1960), C.D. 365 U.S. 836, 81 S.Ct. 750, 5 L.Ed.2d 745 (1960), this court stated at pp. 403–404:

> " * * *, it is well settled that the jury must be fairly apprised of the nature of the charges against the defendant, but this does not necessarily require a reading of the indictment to the jury either in whole or in part. Gallot v. United States, 5 Cir., 1898, 87 F. 446; Norman v. United States, 6 Cir., 1939, 100 F.2d 905; Nick v. United States, 8 Cir. 1941, 122 F.2d 660, 138 A.L.R. 791."

Under the category of "errors in the admission of exhibits", we consider appellant's assigned errors of the admission

of Exhibit 84 prior to adequate proof of the corpus delicti, using Exhibit 84 for the admission of other uncorroborated documents and testimony, and the admission of Exhibit 61.

Exhibit 84 consists of a lengthy written statement signed by appellant, outlining his activities in connection with: F & M Land Development Company, Silver State Farms, Inc., applications for Desert Land Entry, activities with other individuals in connection with the acquisition of applications for Desert Land Entries, etc. Appellant's objection to the admission in evidence of said exhibit is not that the exhibit is inadmissible, but that it was received into evidence prior to adequate proof of the corpus delicti of the offense set forth in the indictment. We recognize the rule that the corpus delicti of the offense charged must be established by evidence outside of the defendant's confession. However,

"The order in which evidence to prove the corpus delicti is to be received is not important and is largely a matter within the discretion of the trial court. If proof in the nature of independent corroborative evidence supports the introduction of a confession, the time of its introduction is not important. It is sufficient if it is forthcoming at some point in the trial." Adolfson v. United States, (9 Cir., 1947), 159 F.2d 883; cert. den. 331 U.S. 818, 67 S.Ct. 1307, 91 L.Ed. 1836.

We find no merit in appellant's objection.

We refuse to consider appellant's assignment that Exhibit 84 "was used as a basis for the admission of other uncorroborated documents and testimony", for the reason that there is complete failure on the part of appellant to comply with Rule 18, subd. 2(d) of the Rules of this Court.

Exhibit 61 contains the regulations of the Department of the Interior relating to Desert Land Entries. Without citation of authorities and without record references, appellant contends that the admission of such exhibit was substantially prejudicial. The regulations pertain only to the various requirements that must be met by persons seeking to file entries on desert land. We find no abuse of discretion in the admission of such exhibit. Appellant has utterly failed to establish any prejudice resulting therefrom.

Under the category of "insufficiency of the evidence" we have considered appellant's various assignments relating to the failure of the court to grant appellant's several motions for acquittal, failure to prove an "investment contract", failure to prove "that material representations were false", that the verdict was contrary to the evidence, and failure to prove a "scheme or artifice to defraud." It is to be borne in mind that it is our duty to view the evidence in the light most favorable to support the jury's verdict. Notwithstanding the inadequacy of appellant's brief and his failure to comply with the provisions contained in Rule 18 subd. 2, rules of this Court, we have reviewed the record in this case and are satisfied that there is ample evidence from which a jury could find that the essential elements of the offense set forth in the indictment had been established beyond reasonable doubt. The indictment does not set forth an offense under the Securities Act of 1933 (15 U.S.C. § 77a et seq.). The indictment charges a conspiracy to violate 18 U.S.C. § 1341 by use of the mails in order to execute " * * a scheme and artifice to defraud and obtain money and property from investors in securities," which investment contracts are defined in the indictment and were likewise adequately defined in the instructions given by the District Court. The term "investment contract" as developed in decisions defining that term as used in the Securities Act of 1933 have no relevance to the offense of which appellant was charged and convicted.

Finding no reversible error in the record, the judgment of conviction appealed from is accordingly affirmed.