UNITED STATES of America,

v.

**Martin WOLFF, Defendant.**

No. 4:CR–93–0250.

United States District Court,
M.D. Pennsylvania.

Dec. 17, 1993.

Martin C. Carlson, Asst. U.S. Atty., Harrisburg, PA, for U.S.

Ronald C. Travis, Williamsport, PA, for defendant.

*MEMORANDUM*

McCLURE, District Judge.

**BACKGROUND:**

On October 14, 1993, defendant Martin Wolff was indicted by a grand jury sitting in the Middle District of Pennsylvania for willfully disobeying, resisting and refusing to comply with a lawful order of this court, in violation of 18 U.S.C. §§ 401(3), 2. The order in which defendant is alleged to be in contempt was one issued by this court in the case of *United States v. Martin Wolff,* No. 1:CR–92–163, in which defendant had been charged with mail fraud, wire fraud, money laundering, and conspiracy. Trial is pending in both cases.

Before the court are defendant's motion to dismiss and the government's motion to join the offenses for trial.

**DISCUSSION:**

### I. MOTION TO DISMISS

Defendant's motion to dismiss is based upon proffered facts which, according to de-

---

fendant, are those which the government will seek to prove at trial. The government concedes that the facts recited by defendant are those which it claims form the basis for the charge of contempt. Defendant argues, in a manner somewhat analogous to a motion to dismiss or for summary judgment in a civil matter, that, even if the government proves these facts, it will not have proven that defendant has committed any crime.

■ The government argues that a motion to dismiss under Fed.R.Crim.P. 12(b) is intended for situations in which there is a defect in the indictment or information, or some other defect in the institution of the prosecution; it is not intended to raise issues going to the merits of the case. The raising of a factual defense is improper under Rule 12(b). *See generally United States v. Ayarza–Garcia,* 819 F.2d 1043, 1048 (11th Cir.), *cert. denied,* 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987), and cases cited therein.

■ We find, however, that defendant has proven that there is a defect in the indictment or institution of the prosecution. The grand jury returned an indictment indicating that there is probable cause to find that defendant committed the offense charged. Defendant's contention, though termed as one challenging the sufficiency of the evidence to be presented at trial, also may be termed a challenge to the sufficiency of the evidence presented to the grand jury; in other words, the grand jury legally could not have found probable cause based upon the evidence presented to it. In such a case, *Ayarza–Garcia, supra,* does not control.

■ The Ninth Circuit Court of Appeals described the situation of a defendant in a situation analogous to that of defendant as follows:

> Prescott claims that the evidence presented to the Grand Jury was insufficient to warrant her indictment. The Grand Jury proceedings were not transcribed; hence there is nothing in the record to show what evidence the government did, or did not, present. Prescott merely speculates.
>
> An indictment, regular on its face and returned by a legally constituted and unbi-ased Grand Jury, is presumed to be founded upon sufficient evidence, and a heavy burden is placed upon one who challenges this presumption of validity, *Martin v. United States,* [335 F.2d 945, 949 (9th Cir. 1964)]. Prescott's showing is plainly insufficient.

*United States v. Prescott,* 581 F.2d 1343, 1347 (9th Cir.1978). *See also United States v. Johns,* 742 F.Supp. 196, 223 (E.D.Pa.1990) (government need present to the grand jury evidence sufficient to warrant a finding of probable cause).

The record before this court, on the other hand, reflects the evidence in the hands of the prosecution in defendant's proffer of what the government will attempt to prove at trial, the government's statement of facts in its response to the motion to dismiss, and the government's statement of facts in its brief in opposition to the motion to dismiss.

The facts presented to the court by both sides are consistent. Defendant currently is awaiting trial on charges of mail fraud, wire fraud, money laundering, and conspiracy. After taking defendant into custody, the government sought to obtain handwriting exemplars from him. Defendant refused to provide the exemplars, and the government moved the court to compel defendant to do so.

On March 2, 1993, this court signed an order (record document no. 48 in No. 1:CR–92–0163), drafted by the prosecution, compelling defendant to provide the exemplars. That order read in part:

> 6. Accordingly, since the requested exemplars are not privileged, and are necessary for the prosecution of this case given the defendant's refusal to stipulate to his own business records, IT IS ORDERED that the defendant shall appear at the Federal Courthouse in Harrisburg, Pennsylvania on or before on [sic] March 15, 1993 at 9:30AM o'clock [sic] to provide handwriting exemplars to the government.

Since defendant was already in the custody of the United States, it was clear that all that was necessary was for the government to bring defendant to Harrisburg and demand the exemplars at any time between March 2

and March 15. The government planned to do so on March 15.

Unfortunately, on that date, a Monday, Pennsylvania (as well as a number of other states) was digging out from a record blizzard. Postal inspectors therefore were not available to take the exemplars from defendant on March 15, despite the fact that defendant was transported to Harrisburg specifically for that purpose. He was not asked to give exemplars that day, and there is no evidence that if asked he would have refused.

On March 10, 1993, defendant filed a motion to "annul" our order of March 2. The motion to annul was denied by order dated March 18, 1993. We therein stated that the motion to annul was "clearly without merit."

After March 15, the government demanded the exemplars on at least three occasions: in a March 17, 1993, meeting with postal inspectors; by letter to counsel for defendant dated March 23, 1993; and in an October 5, 1993, meeting with government counsel and postal inspectors. Following defendant's refusal on the latter occasion, the government sought and obtained an indictment charging defendant with disobeying, resisting and refusing to comply "with a lawful order of the Court directing WOLFF to produce handwriting exemplars." Indictment (record document no. 1).

The events, then, may be summarized as follows:

March 2  Order directing exemplars be provided on or before March 15

March 10  Defendant files motion to annul

March 15  Blizzard; deadline passes without a demand for the exemplars

March 17  Demand made and refused

March 18  Motion to annul denied, with statement that motion was without merit

March 23  Letter to defense counsel reiterating demand, to which there was no response

October 5  Demand made by government counsel, postal inspectors refused

Based upon the foregoing, the grand jury cannot have been presented with evidence which established probable cause that an offense was committed because the conduct of defendant, even if established by the government, does not constitute contempt of any order of the court. No demand was made on or before March 15, 1993; defendant therefore did not unlawfully refuse to comply with our order. There is no ambiguity in the order: the exemplars were to be presented on or before March 15.

The government argues that the March 2 order should be read in conjunction with the March 18 order to show that defendant knew that he was required to provide the exemplars. While such may be the case, neither order, alone or in conjunction with the other, directs defendant to provide the exemplars after March 15. Our order of March 18 can in no way be read as extending the deadline for compliance with the March 2 order, as setting any new deadline, or as creating a continuing obligation.

In short, there simply was no failure on the part of defendant to comply with any order of this court. The grand jury cannot have had evidence constituting probable cause of contemptuous conduct, since no such evidence exists. The indictment having been returned without probable cause having been established, the court will dismiss the indictment. The court is not precluded from doing so, as the lack of evidence goes not to a factual defense, but to a defect in the indictment.

We realize that the dismissal of the instant case is unusual. However, the circumstances of the case are unusual. The court has been presented with an indictment involving alleged contempt of its own order. The order was drafted by the government, which now is attempting to prosecute contempt of the order despite its own failure to follow the order. The facts of the case have been made clear on the record, in a manner similar to a statement of undisputed material facts in a motion for summary judgment under Fed. R.Civ.P. 56 and Local Rule for the Middle District of Pennsylvania 401.4. All of these circumstances take this case out of the realm of the "usual" for purposes of a motion to dismiss.

If the court were to deny the motion to dismiss, it is crystal clear to the court that further trial preparation, jury selection and

presentation of the government's case would be a complete waste of judicial resources and an unnecessary imposition on the jurors. There is absolutely no doubt that the court would grant defendant's motion for judgment of acquittal at the close of the evidence offered by the government, in accordance with Fed.R.Crim.P. 29(a). Under these extraordinary circumstances, the court has construed Rule 12(b) in the only possible fashion consistent with the directive in Rule 2 to eliminate "unjustifiable expense and delay" in providing a "just determination" of this criminal proceeding. This motion is fully "capable of determination without the trial of the general issue." Fed.R.Crim.P. 12(b).

The only issue remaining, then, is entirely legal: whether the conduct of the defendant may constitute contempt of this court's order. Since the conduct to be proven is not unlawful, there cannot have been probable cause established before the grand jury that a crime was committed. Our holding, however, should be limited to the unusual circumstances of the case.

## II.  MOTION TO JOIN OFFENSES FOR TRIAL

Since we will dismiss the indictment, the motion to join offenses for trial becomes moot, and therefore will be denied.