NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3264
_____

UNITED STATES OF AMERICA

v.

MICHAEL KATZIN,

Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Civ. Action No. 5-11-cr-00226-002)
District Judge: Honorable Gene E. K. Pratter
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 14, 2017
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, *Circuit Judges*.

(Opinion Filed: September 8, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Michael Katzin was convicted at trial of four federal offenses: 1) conspiracy to commit pharmacy burglary, 18 U.S.C. § 2118(d); 2) conspiracy to possess with intent to distribute controlled substances, 21 U.S.C. § 846; 3) pharmacy burglary, 18 U.S.C. § 2118(b); and 4) possession with intent to distribute controlled substances, 21 U.S.C. § 841.  In this appeal, he now raises three claims.  First, he challenges his indictment and conviction on the two conspiracy counts.  Second, he argues that his expert testimony should not have been excluded.  Third, he challenges the application of a sentencing enhancement for obstruction of justice.  We will affirm.

## I.      BACKGROUND

Because this case has already been partially litigated in this Court, we recite only those additional facts necessary for this appeal.  Michael Katzin and his brothers were pulled over and then arrested after burglarizing a Rite Aid in Hamburg, Pennsylvania.  They were apprehended through the use of GPS tracking, raising Fourth Amendment issues that were eventually resolved by this Court, sitting *en banc*, 769 F.3d 163 (2014).  When stopped, Michael Katzin was a passenger in the car.  The vehicle contained items from the Rite Aid as well as burglary tools connected to the break-in.

After the GPS issues were finally resolved, Katzin's brothers reached plea agreements with the government.  Michael, however, pled not guilty to the original two-count indictment, including both non-conspiracy charges, and proceeded to trial.

Two pretrial issues are relevant to this appeal.  First, the government filed a motion to admit evidence of past acts, including what the government characterized as an

2

earlier attempted burglary in Feasterville-Trevose, Pennsylvania, pursuant to Federal Rule of Evidence 404(b). Before the District Court could rule on that motion, however, a superseding indictment was returned, adding the two conspiracy charges against Katzin. At that point, the District Court determined that the evidence about the Feasterville incident was intrinsic to the conspiracy charges, not evidence of other bad acts governed by Rule 404, and therefore admissible. The defense also tried to exclude the Feasterville incident from trial by moving to strike allegations concerning that incident from the superseding indictment.

Second, shortly before trial, the defense sought to introduce expert testimony supporting Katzin's claim that he had slept through the Hamburg burglary due to a large dose of Xanax. Katzin's alleged intoxication was not mentioned at the time of arrest— indeed, at that point, Katzin spoke with police, who did not observe him to be intoxicated—or in the years of pretrial proceedings. On December 28, 2015, the defense notified the government that it would introduce a medical expert, Dr. John O'Brien, to testify about Katzin's addiction to opiates and benzodiazepines and his mental capacity at the relevant time. The defense served its expert report on the government on December 31, 2015, eight days before trial commenced on January 8, 2016.

The government objected to this expert evidence on both substantive evidentiary grounds, pursuant to Federal Rules of Evidence 704(b) and 403, and on procedural grounds, pursuant to Federal Rules of Criminal Procedure 12.2 and 16. The District Court partially excluded the evidence on substantive grounds, holding that Dr. O'Brien could not testify to the ultimate issue of Katzin's *mens rea* and that hearsay elements of

3

O'Briens's report were more prejudicial than probative. The District Court then excluded all of the expert evidence on procedural grounds. It observed that Rule 12.2 requires the defense to notify the prosecution and the court of an intention to introduce expert evidence related to a mental condition bearing on the issue of guilt within the time set for filing pretrial motions (Rule 16, it noted, imposes similar disclosure obligations). Because the original deadline for pretrial motions had been set for August 12, 2011, with a second deadline after the Fourth Amendment appellate proceedings were complete set for August 7, 2015, the District Court ruled the defense's disclosure untimely and excluded the evidence.

The case proceeded to trial, where, among other things, Michael Katzin took the stand. He testified that on the night of the Hamburg burglary, he joined his brothers to get something eat. Because he had swallowed a handful of Xanax, he testified, he promptly fell asleep, awakening only long enough to take more pills until he was arrested. According to Katzin, he was "sleeping in the car the whole time." App. 1026a. The jury ultimately convicted on all four counts.

After trial, the probation office recommended adding two levels to Katzin's offense level for obstruction of justice based on perjurious testimony at trial, including his professed lack of knowledge about the burglary. The defense objected, and a colloquy ensued during which the parties presented their positions on perjury and during which the Court explored whether and how Katzin's untimely disclosures affected a finding of obstruction of justice. In the end, the Court applied the adjustment because "the defendant has, for whatever reason, essentially tweaked his nose at the justice

4

system and has shown a lack of respect for it and its administration and the jury and the Court and did obstruct the operation of justice both during the pretrial proceedings and then at trial." App. 1295a.

## II.  JURISDICTION

The District Court had jurisdiction over this criminal proceeding pursuant to 18 U.S.C. § 3231.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III.  THE CONSPIRACY CLAIMS

The defense challenges Katzin's convictions on the two conspiracy counts for three reasons.  It asserts that 1) the conspiracy allegations should have been struck from the indictment, 2) the government had an improper motivation for adding the conspiracy counts in its superseding indictment, and 3) there was not sufficient evidence to convict.[1] We address each in turn and will affirm.

### III.A  *Sufficiency of the Evidence before the Grand Jury*

The defense first argues that the District Court "should have stricken the conspiracy counts from the Superseding Indictment because there was insufficient evidence presented to the grand jury to establish criminality or wrongdoing."  Appellant's Br. at 24.  When reviewing a motion to dismiss an indictment, we "exercise plenary

---

[1] To the extent that Katzin also claims that this evidence was prejudicial, which we do not think he argues as an independent claim, we find this argument waived on appeal, as it is not meaningfully pressed in his brief. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) (noting that it is "well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal").

review over the District Court's legal conclusions and review any challenges to its factual findings for clear error." *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012).

As we have held, an "indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *Id.* at 594-95 (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)) (emphasis omitted). Generally, an indictment will be facially sufficient if it "informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *Id.* at 595.

The defense bases its argument that the court should inquire into the sufficiency of the evidence supporting the indictment on a single district court case: *United States v. Wolff*, 840 F. Supp. 322 (M.D. Pa. 1993). Although that case did delve into the sufficiency of the evidence before the grand jury, it declared its own (already non-precedential) holding "limited to the unusual circumstances of the case." *Id.* at 325. In that contempt proceeding, the court was presented with no disputed facts, only with a legal question concerning the interpretation of that court's own order. *Id.* *Wolff* has no applicability here. Accordingly, this argument provides no basis for us to reverse the District Court's decision or to depart from our ordinary approach to the sufficiency of an indictment. *See United States v. Centeno*, 793 F.3d 378, 388 n.9 (3d Cir. 2015) (arguments "not squarely argued" on appeal are waived).

III.B    *The Motivations behind the Indictment*

Although he cites no law to support his theory, Katzin complains that his indictment was improper because it was motivated by the prosecution's desire to evade

6

the strictures of Rule 404 by transforming past acts evidence into intrinsic evidence of a conspiracy. Katzin's claim could, perhaps, be framed as challenging a retaliatory charging in response to his efforts to exclude improper past acts testimony. Without the benefit of Katzin's own legal theory, we analyze his claim under the framework of prosecutorial vindictiveness, which prevents a person from being "punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982).

However, in a pretrial context, the Supreme Court has explained that "[a]n initial [prosecutorial] decision should not freeze future conduct" and that a "prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id.* at 382. Thus, in the absence of "actual vindictiveness," which requires evidence that the charging decision resulted "solely" from the defendant's exercise of a legal right, a prosecutor is permitted to add charges to an indictment. *See United States v. Paramo*, 998 F.2d 1212, 1221 (3d Cir. 1993). Katzin does not point to any such evidence.

III.C *Sufficiency of the Evidence at Trial*

We review the sufficiency of the evidence under a "particularly deferential standard," reviewing the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[ ] beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (alteration in original). A verdict must be upheld "as long as it does not

7

fall below the threshold of bare rationality." *Id.* at 431 (internal quotation marks omitted).

Here, that standard is satisfied. With respect to the Feasterville incident, evidence showed that Katzin, Harry, and a third individual were found behind a shopping center late at night, with tools that could be used for burglary. The store's alarm system had also been disabled, although it is not clear when this occurred. Viewing this evidence in combination with the strong evidence of the completed burglary in Hamburg—including the items taken from the Rite Aid and physical evidence connecting the entry tools to the defendants—a reasonable jury could determine that the Feasterville incident was part of the same conspiracy. This is all the more so given that these were the same individuals, in the same vehicle, with similar tools, at the same time of night. We also note, as the District Court did, that "the overt acts necessary to establish a conspiracy need not themselves be illegal," *United States v. Palmeri*, 630 F.2d 192, 200 (3d Cir. 1980), and it is therefore immaterial whether Katzin could have been convicted of attempted burglary, as a stand-alone offense, based on the Feasterville evidence. Given our standard of review, this verdict was supported by sufficient evidence: it rises above the level of bare rationality.

## IV. EXPERT TESTIMONY

The District Court excluded Defendant's expert testimony in its entirety for the defense's failure to comply with Rules 12.2 and 16 of the Federal Rules of Criminal Procedure. We review for abuse of discretion. *United States v. Scott*, 223 F.3d 208, 211 (3d Cir. 2000). Rule 12.2(b) provides that:

8

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must--within the time provided for filing a pretrial motion or at any later time the court sets--notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Rule 16(b)(1)(C)(ii) provides further that the defense must, if requested, give the government a summary of expert testimony if the defense intends to present expert testimony under Rule 12.2(b).

The defense first argues, without support, that Rule 12.2(b) does not apply to a voluntary intoxication defense. However, intoxication would appear to be a "mental condition" pursuant to the plain text of the Rule. Fed. R. Crim. P. 12.2(b). Moreover, the notes to Rule 12.2 make clear that mental condition is to be applied to any of a "wide variety of circumstances" where the government would need notice to effectively rebut and cross-examine the defense's expert witnesses. Fed. R. Crim. P. 12.2, Advisory Committee's Note to 1983 Amendment. This reasoning applies to this intoxication defense. Indeed, the notes approvingly cite the Eighth Circuit's opinion in *United States v. Olson*, 576 F.2d 1267 (8th Cir. 1978), which applied Rule 12.2 to testimony about alcohol's effect on the defendant's mental capacity. The Second Circuit has also applied Rule 12.2(b) to the voluntary intoxication defense, specifically. *United States v. Cervone*, 907 F.2d 332, 345-46 (2d Cir. 1990). Thus, the Rule is applicable.

The defense next argues that, if the Rule applies, the District Court abused its discretion in excluding the testimony in its entirety. It argues, essentially, that the

9

defense notified the government of its expert testimony as early as it could have, on the basis that Katzin had no reason to tell counsel that he had slept through the robbery until after the GPS issues in this case had been fully resolved. Even if we accepted that Katzin need not have raised this issue by the first deadline for pretrial motions, in 2011, however, this does not excuse his failure to meet the August 7, 2015 deadline, after all appellate proceedings had concluded. The defense first notified the government of its intent to introduce this expert testimony on December 28, 2015, and provided the government with its expert report on New Year's Eve. The District Court was well within its discretion to exclude this evidence. *See Gov't of Virgin Islands v. Knight*, 989 F.2d 619, 627-29 (3d Cir. 1993) (finding no abuse of discretion where notice of intent filed three working days before trial and noting that attorney should have investigated case to determine if insanity defense would be presented).

## V. SENTENCING

When reviewing sentencing adjustments pursuant to § 3C1.1 of the Sentencing Guidelines, we review the district court's factual determinations of willful obstruction of justice for clear error, while its legal interpretations are subject to plenary review. *United States v. Brennan*, 326 F.3d 176, 200 (3d Cir. 2003). To preserve an issue for appeal and avoid plain error review, a defendant "must raise any procedural objection to his sentence at the time the procedural error is made." *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc).

Katzin raises two challenges to the imposition of the obstruction of justice adjustment: first, that the adjustment was improperly imposed based on his dilatory

10

behavior with respect to his expert materials and "sleeping" defense, as discussed above; and second, that if the adjustment was imposed based on perjurious statements, then the District Court failed to make the requisite findings.

While the District Court was clearly perturbed by Katzin's late disclosures, it also based its sentencing decision, at least in part, on its determination that Katzin committed perjury. *See, e.g.*, App. 1289a (Court observing that if people "get up on the stand and come up with something that was so clearly not believable," then "[t]hat to me does raise the possible appropriateness of the adjustment."). This provides an adequate basis for the imposition of the enhancement.[2]

Nor did the District Court clearly err in finding perjury here. "A defendant who testifies under oath at trial commits perjury within § 3C1.1 if he 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Napolitan*, 762 F.3d 297, 312 (3d Cir. 2014) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). The District Court had a sufficient basis to conclude that Katzin met this standard. Based on its conviction, the jury necessarily found that Katzin's statement that he slept through the burglary and was unaware of it was false—and this was a central

---

[2] The District Court's consternation with Appellant's failure to provide notice of his defense with alacrity is certainly warranted. It is not clear, however, whether that provides a legal basis for imposing a sentencing enhancement pursuant to § 3C1.1, as the District Court did, in part. *See* U.S.S.G. § 3C1.1 Commentary, Notes 4-5. However, we need not reach this question, for "we can affirm on any basis appearing in the record." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006). Because the record supports the District Court's finding of perjury, there is a separate and independent basis for applying § 3C1.1.

11

issue in his case. This is supported by evidence, for example, that Katzin did not appear intoxicated at the time of arrest and telephone records showing that Mark Katzin repeatedly called Michael Katzin's cell phone during the trial, App. 781-89. Nor is there any indication (or argument by Appellant) that Michael Katzin's false testimony stemmed from confusion or mistake.

As for the lack of findings, it is true that where a defendant has objected to a sentence enhancement based on trial testimony, as here, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." *Dunnigan*, 507 U.S. at 95. It is "preferable" for the district court to address each finding separately and clearly, but it is sufficient for the court to make a finding that "encompasses all of the factual predicates for a finding of perjury." *Id.* The District Court failed to make such findings here. App. 1295a. However, the defense did not object to this failure during sentencing, so we review only for plain error. An error is plain if it is "clear" or "obvious," is prejudicial, and "affects the fairness, integrity or public reputation of judicial proceedings." *Flores-Mejia*, 759 F.3d at 259. We have excused a district court's failure to expressly make perjury findings where the relevant determinations are "implicit in the district court's reasoning" and "clear from our independent review of the record." *United States v. Boggi*, 74 F.3d 470, 479 (3d Cir. 1996). Thus, given the strictures of plain error review, we do not find plain error here.

## VI. CONCLUSION

Because we find no reversible error in the District Court's treatment of the conspiracy charges, its evidentiary decisions, or its sentencing, we will affirm.