RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee*,

    *v.*

JAMES WILDER, II,

          *Defendant-Appellant*.

No. 22-2129

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:21-cr-20671-1—Matthew F. Leitman, District Judge.

Decided and Filed:  December 4, 2023

Before:  BOGGS, SUHRHEINRICH, and READLER, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Charles A. Grossmann, Flint, Michigan, for Appellant.  William J. Vailliencourt, Jr., UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

### OPINION

_____

CHAD A. READLER, Circuit Judge.  James Wilder II was walking along a road on a rainy night.  When a police car approached, an officer noticed a gun at Wilder's hip.  Wilder ran, clutching his waist.  The officer observed Wilder drop the gun and pick it up before running into a house.  A search of the home yielded a gun matching the one the officer had observed, leading to Wilder's arrest.  While in jail, Wilder called a friend and directed her to pay the residents of the home to say (falsely) that they owned the gun.  A jury ultimately found Wilder guilty of both possession of a firearm as a felon and attempted witness tampering.

Wilder challenges the admission of trial testimony regarding the officer's training and experience.  He also contests the sufficiency of the evidence supporting his attempt conviction.  Finding no prejudicial error in the district court proceedings, we affirm.

I.

While on patrol in Flint, Michigan, Officer Meric Whipple and his partner responded to a call reporting shots fired.  While touring the scene in their police cruiser, Whipple witnessed a man walking beside the road.  Whipple saw what appeared to be a gun tucked into the man's waist with a visible extended magazine attached.  As the vehicle came to a stop, the man clutched his waistband and started running.  Whipple exited the vehicle and gave chase.  During his pursuit, Whipple saw the man drop the gun and pick it back up before running into a house.

Residents of the home agreed to let the officers search the premises.  Inside, the officers encountered four individuals, including the man who had fled from Whipple, later identified as James Wilder II.  The officers noticed a ceiling attic-access door ajar, broken cobwebs hanging at its side.  In the attic, the officers found a handgun lying in a bed of insulation next to the attic access.  The gun matched the one Whipple had seen Wilder drop while being pursued.  The officers arrested Wilder, who they later discovered was serving a term of federal supervised release.

From jail, Wilder only made matters worse.  During a recorded call to a friend, Wilder described his encounter with law enforcement:  as officers "pulled up," Wilder "dipped back to her crib," and "the motherfucker got hid," but the officers "found that motherfucker."  Wilder also asked his friend for the number of a woman named Amy.

Next, Wilder called Amy on a recorded line.  He asked her to approach a woman who lived in the home where the gun was found and "get her on that page, or pay her at least" to claim the gun was hers, or see if her brother would claim it was his gun.  He emphasized that Amy should "go talk to them" because Wilder "need[ed] them to come to [his] court date."  He told Amy to "at least give them a couple dollars or something" because he did not want to go back to prison.  During the call, Wilder offered to call the woman himself if Amy could get her number.  Amy responded that she was "pulling up" to the home and asked if she should "get the

money together tonight" or "try and see if it's gonna go through or not." Wilder responded, "You can. You can do that too."

For these activities, the government charged Wilder with one count of being a felon in possession of a firearm, under 18 U.S.C. § 922(g), and two counts of attempted witness tampering, under 18 U.S.C. § 1512(b). At trial, the United States called Whipple to testify. Whipple discussed his training and experience, emphasizing the instruction he received on recognizing when someone might be armed, as well as instruction on identifying types of firearms. According to Whipple, at the time of trial, he had participated in "200 or 300" stops where guns were found, about 50 of which involved a fleeing suspect.

Wilder objected to Whipple's testimony on relevancy grounds. The government responded that Whipple's testimony explaining his training and experience better equipped the jury to evaluate his ability to "observe and respond to the events that night." The district court overruled Wilder's objection.

At the close of the government's case, Wilder moved for acquittal on the two counts of witness tampering. In support of his motion, Wilder argued that there was insufficient evidence that he took a substantial step towards committing witness tampering, a necessary element of the offense. The district court denied Wilder's motion. When the trial resumed, Wilder offered no evidence. At the close of its deliberations, the jury convicted Wilder of all charges. He now appeals.

## II.

A. Wilder begins by challenging the district court's admission of Whipple's testimony regarding his training and experience identifying firearms. To Wilder's mind, that testimony was irrelevant to the government's prosecution. We review his relevancy challenge for an abuse of discretion, *United States v. Johnson*, 79 F.4th 684, 698 (6th Cir. 2023), meaning Wilder must demonstrate that the district court (1) misunderstood the law, (2) relied on clearly erroneous factual findings, or (3) made a clear error in judgment. *United States v. Chavez*, 951 F.3d 349, 358 (6th Cir. 2020) (citation omitted).

In evaluating the merits of Wilder's challenge, we start from the understanding that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence." Fed. R. Evid. 401. This amounts to a "low bar," *United States v. Potter*, 927 F.3d 446, 452 (6th Cir. 2019), one the government easily clears here. Whipple's training in and experience with identifying weapons was relevant to the government's case. In the context of recognizing an individual, we have held that a person's familiarity with an individual makes it more likely that the person would properly identify that individual. *See United States v. Crozier*, 259 F.3d 503, 511 n.2 (6th Cir. 2001) ("[I]t is material whether the witness was familiar with the defendant, because the more familiar the person, the more reliable the identification."). The same logic applies to identifying firearms. An individual familiar with what a concealed weapon looks like is better able to identify one than someone who has no familiarity. And through this testimony, Whipple demonstrated his familiarity with recognizing guns. In that way, Whipple's testimony provided the jury information from which it could gauge the credibility of his identification. *See, e.g.*, *United States v. Perry*, 438 F.3d 642, 649 (6th Cir. 2006) ("The weight to be given to [identification testimony] is for the jury to determine.")

Even if relevant, Wilder responds, the testimony's probative value is substantially outweighed by the risk of unfair prejudice, meaning the evidence fails the balancing test from Federal Rule of Evidence 403, rendering it inadmissible. Here, Wilder faces a pair of obstacles. One is the settled understanding that a district court is afforded "broad discretion" in conducting this balancing test. *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) (citation omitted). The other is the fact that Wilder did not raise his Rule 403 challenge in the district court, meaning we review the issue for plain error. *United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009) (citation omitted). And plain error requires a showing of "(1) an error, (2) that was obvious or clear, (3) that affected [his] substantial rights, and (4) that affected the fairness, integrity, or public reputation of [the] judicial proceedings." *United States v. Johns*, 65 F.4th 891, 893 (6th Cir. 2023) (citation omitted).

We see no plain error in admitting this evidence. Wilder reads Whipple's testimony as "imply[ing] that almost everybody on the streets of Flint has an illegal gun," leading to an

unduly prejudicial "statistical conclusion" that Wilder must have possessed one as well. But Whipple's testimony was about his familiarity with identifying weapons. He was not opining on the prevalence of illegal guns in Flint. Instead, he simply testified as to his experience to support his understanding of Wilder's conduct. Regardless, any marginal risk of unfair prejudice that Wilder alleges does not substantially outweigh the probative value to the credibility of Whipple's observations on the night in question. *See* Fed. R. Evid. 403.

B. Next, Wilder challenges the sufficiency of the evidence supporting his conviction for attempted witness tampering, in violation of 18 U.S.C. § 1512(b). To convict Wilder, the government had to prove (1) that Wilder intended to commit the crime of witness tampering; and (2) that Wilder took a "substantial step" toward that end. *United States v. Fortner*, 943 F.3d 1007, 1009–10 (6th Cir. 2019) (citation omitted). Our review is circumscribed. As the jury found in the government's favor, we ask "only whether 'the government's case was so lacking that it should not have even been submitted to the jury.'" *United States v. Miller*, 982 F.3d 412, 440 (6th Cir. 2020) (quoting *Musacchio v. United States*, 577 U.S. 237, 243 (2016)). In other words, we must leave the verdict in place if "*any* rational trier of fact," when "viewing the evidence in the light most favorable to the prosecution, . . . could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

As in the district court, Wilder argues that he did not take a substantial step towards completing the tampering. To be deemed a "substantial step," the conduct must go beyond "preliminary activities" and be "something more than mere preparation." *United States v. Alebbini*, 979 F.3d 537, 546–47 (6th Cir. 2020) (citations omitted). It must "corroborate the firmness of a defendant's criminal intent." *Id.* at 546. Words alone, however, can be a substantial step. *United States v. LaPointe*, 690 F.3d 434, 444 (6th Cir. 2012) (citation omitted). That is precisely what happened here. Wilder took a substantial step (steps, in fact) toward witness tampering when he coordinated with and instructed Amy. *See id.* (coordinating a drug deal by phone sufficient for attempt); *United States v. Burns*, 298 F.3d 523, 539 (6th Cir. 2002) (same). Wilder instructed Amy to go to the home where the gun was found to tell the residents to claim the gun was theirs. Wilder told Amy multiple times to bring money with her to bribe

the home's residents to "come to [his] court date." And when Amy said she was "pulling up," Wilder continued to encourage her to execute the plan. These statements "corroborate[d] the firmness of [Wilder's] criminal intent" to tamper with a witness, and they went beyond "preliminary activities." *Alebbini*, 979 F.3d at 546–47 (citations omitted). "A fragment of the crime," it is fair to say, "was essentially in progress." *Id.* at 547 (cleaned up).

Wilder responds by reminding us that Amy's statements during her call with Wilder are hearsay, and thus not substantive evidence. True, but that does not mean we entirely disregard them. Her statements were admitted to provide context for Wilder's statements, not for their truth. *See, e.g.*, *United States v. Jacob*, 377 F.3d 573, 581 (6th Cir. 2004). And Wilder's statements, read in context, reflected "more than mere preparation." *Alebbini*, 979 F.3d at 546. When Wilder heard that Amy was on her way to the home, he continued to instruct her to tamper with a potential witness, demonstrating the firmness of his criminal intent.

Invoking *United States v. Dolt*, 27 F.3d 235 (6th Cir. 1994), Wilder characterizes his conduct as mere solicitation, not attempt. But *Dolt* examined the contours of a Florida solicitation offense, asking whether that offense was equivalent to attempt for the purpose of determining career-offender status. *Id.* at 237–39 (noting "Florida law controls the definition and contours" of Florida solicitation). The answer has no bearing on whether Wilder attempted to tamper with a witness in violation of federal law. Controlling here is the settled federal case law confirming that Wilder's conduct was a "substantial step" towards tampering, as it reflected the "firmness of [his] criminal intent." *Alebbini*, 979 F.3d at 546.

Nor were Wilder's comments to Amy "mere abstract talk," as he suggests. Wilder provided Amy with detailed instructions. He told her to go to the home, ask one of the residents to claim in court that the gun was theirs, and offer money in return. He also volunteered to do the tampering himself if Amy could get the phone number for the woman who lived in the home. There was nothing abstract about these discussions. And those statements, contrary to Wilder's suggestion, may be used to satisfy both elements of attempt; we do not require separate evidence for every element. *See, e.g.*, *United States v. Wettstain*, 618 F.3d 577, 587 (6th Cir. 2010) (noting that evidence of possessing large quantities of controlled substances can prove both possession and intent-to-distribute elements).

Finally, Wilder argues that he did not take a substantial step because he did not pay or threaten Amy. This argument demands too much. Evidence that Wilder had paid or threatened Amy to convince her to tamper with a witness on his behalf would certainly have been sufficient evidence of a substantial step, but it was not necessary. Viewing the evidence as a whole, a rational trier of fact could find that Wilder took a substantial step towards witness tampering when he "counsel[ed], command[ed], [or] induce[d]" Amy to do so. 18 U.S.C. §§ 2, 1512(a)(2).

\* \* \* \* \*

A final housekeeping matter deserves brief mention. Wilder sent a letter to the Court asking to supplement his brief with three additional pro se issues: (1) that 18 U.S.C. § 922(g)(1) is unconstitutional; (2) that Wilder's Fourth Amendment rights were violated; and (3) that his criminal-history score should be lowered because of an amendment to the Sentencing Guidelines. Generally, we do not consider pro se claims brought by a defendant represented by counsel. *See, e.g.*, *United States v. Fontana*, 869 F.3d 464, 472–73 (6th Cir. 2017) (citing *United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011)). We see no reason to deviate from that practice here.

We AFFIRM.