RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JEREMY C. MOONEY,

*Defendant-Appellant*.

⎫
⎬
⎭

No. 24-3270

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:22-cr-00201-1—Edmund A. Sargus, Jr., District Judge.

Decided and Filed: April 25, 2025

Before: GILMAN, STRANCH, and LARSEN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Peter K. Glenn-Applegate, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee.

GILMAN, J., delivered the opinion of the court in which STRANCH, J., concurred, and LARSEN, J., concurred in part. LARSEN (pp. 19–24), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Jeremy Mooney, a former law-enforcement officer, appeals his conviction on two counts of depriving an inmate of his civil rights under color of law, in violation of 18 U.S.C. § 242. Mooney also appeals the procedural

reasonableness of his resulting sentence. For the reasons set forth below, we **AFFIRM** Mooney's conviction, but **VACATE** his sentence and **REMAND** the case for further proceedings with regard to the enhancement for obstruction of justice.

## I. BACKGROUND

Mooney was a deputy in the Pike County Sheriff's Office in 2019. On November 17, 2019, he worked a shift from 11:00 p.m. to 7:00 a.m. the following day. During his shift, Mooney transported several inmates, including Thomas Friend, from the Butler County Jail to a temporary holding facility at the Pike County Sheriff's Office in advance of the inmates' court hearings. During the drive to the holding facility, Friend was acting erratically and banging his body against the side of the van. Upon arrival, Mooney placed Friend in a restraint chair, with Friend's hands handcuffed behind his back. A restraint chair secures an inmate with a harness, which forces the individual to remain seated and confines the torso and limbs.

After strapping Friend into the restraint chair, Mooney pepper sprayed and punched him multiple times, allegedly in response to Friend spitting on Mooney. Surveillance video of the incident shows that, at 5:52 a.m. on November 18, 2019, Mooney dragged Friend, who remained in the restraint chair, outside to a nearby sidewalk. He then left Friend outside alone. At 5:55 a.m., surveillance video shows that Friend had pushed the restraint chair off the curb, so that the chair had tipped onto its back and Friend's legs were in the air. Mooney briefly returned outside but then went back inside. The surveillance video shows that Mooney quickly returned outside with a can of pepper spray in hand. After Mooney and his on-duty supervisor, Sergeant William Stansberry, Jr., returned Friend to the curb, Mooney pepper sprayed Friend directly in the face. Friend once again tipped over his chair, following which Mooney stood over him and sprayed him in the face a second time. Stansberry was present when Mooney pepper sprayed Friend.

Another deputy for the Pike County Sheriff's Office, Danny Carroll, then arrived on the scene. He, Stansberry, and Mooney got Friend and the restraint chair upright and brought Friend inside. The surveillance video shows that Carroll and Stansberry then left the room where Friend was placed at around 6:10 a.m. Once Mooney was alone with Friend, Mooney punched Friend in the head eleven times in three bursts, all while Friend was handcuffed and restrained in the

chair. The first burst occurred around 6:30 a.m., when Mooney punched Friend three times and left the room. Mooney returned three minutes later and punched Friend three more times. After another 20 seconds, Mooney delivered his final five punches.

Mooney broke his own hand punching Friend and went to the hospital for the injury. Friend was separately transported to the hospital.

**A.  Indictment and Mooney's motion to dismiss the indictment**

In October 2022, a grand jury in the Southern District of Ohio returned an indictment that charged Mooney with two counts of depriving Friend of his civil rights under color of law, in violation of 18 U.S.C. § 242, and charged Stansberry with one count of the same. Count 1 alleged that Mooney willfully violated Friend's constitutional rights when he deployed pepper spray, and Count 2 alleged that he willfully violated Friend's constitutional rights when he punched Friend multiple times.

Before trial, Mooney moved to dismiss the indictment. He claimed that the government had violated his Fifth Amendment right to due process by destroying materially exculpatory video evidence in bad faith, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The government opposed the motion, arguing that *Brady* did not apply because the prosecution never had possession of the video.

When this case was referred to the FBI, the government received surveillance video showing Mooney's use of force against Friend, but not footage of the entirety of the time that Friend was present at the Pike County Sheriff's Office. The government argued that even if *Brady* applied, Mooney had failed to make the requisite showings that the video was exculpatory or that it was destroyed in bad faith.

The district court held a hearing and heard testimony from a number of individuals who worked at the Pike County Sheriff's Office in November 2019, including Dispatch Supervisor Anthony Bickers, who testified that he was instructed to gather security footage covering the use of force. He accordingly reviewed the recordings and clipped what showed the use of force with regard to Friend.

Bickers said that he did not download the full video showing the entire time that Friend was present in the Pike County Sheriff's Office because he was instructed to gather video showing only the use of force, and because "exporting a video file that large would have crashed the system." He also testified that he did not know then that videos were automatically erased in seven days. Bickers described the other footage that he reviewed, but did not copy, as showing Mooney "standing around on his phone, doing various jail tasks, sorting paperwork," and Friend "spinning himself around in his restraint chair."

The district court denied Mooney's motion on the grounds that he had failed to show that the lost video had exculpatory value or that either Pike County or the government had acted in bad faith. It found Bickers's testimony credible regarding what the remaining video showed. Further, the court found that there was no malice in the destruction of the video because the video automatically overwrote itself after seven days. The court concluded that Pike County was, at most, negligent in failing to preserve the missing footage.

## B. Final pretrial hearing

At the final pretrial hearing, Mooney informed the district court that he intended to present evidence that Friend had Hepatitis C at the time of their interaction. Mooney alleged that he punched Friend in reaction to Friend spitting on him because he was afraid that he would contract Hepatitis C from Friend's saliva. The government opposed admission of this evidence on the basis of relevancy and that any probative value was substantially outweighed by the risk of unfair prejudice.

On the first day of trial, the district court ruled that Rules 401 and 403 of the Federal Rules of Evidence prohibited admission of this evidence. It found that the evidence was not relevant to any material fact in the case and that it was potentially prejudicial. The court, however, stated that related topics would be admissible, including training about contagious diseases and the danger of spit containing disease.

## C. Trial

Mooney's trial began in August 2023 and lasted for three days. The government presented eight witnesses—former Chief Deputy Robert Barbee, former Chief Deputy Ryan

Bentley, Deputy Danny Carroll, former Sergeant Stansberry, Dispatch Supervisor Bickers, Sergeant Jonathan Chandler, EMS Lisa Kinnard, and Corporal Adam Ball. Jurors heard testimony from Barbee, Bentley, Carrol, Chandler, and Ball regarding basic police training relating to the use of force. Most relevant to this appeal, Chandler testified that he learned at the police academy that certain uses of force could constitute a violation of an inmate's civil rights. The government asked Chandler if "law enforcement officers [are] allowed to use force to punish someone" and whether "officers [are] allowed to use force because someone is annoying them." Chandler responded that officers were not permitted to use force in either of these situations. When the government asked why, Chandler stated that he was taught that such a use of force would violate a person's civil rights. Stansberry, who had by then pleaded guilty to the count against him, testified that he had not instructed Mooney to pepper spray Friend.

Mooney testified as the only defense witness. Directly contrary to Stansberry's testimony, Mooney said that Stansberry had ordered him to pepper spray Friend. Mooney also testified that he punched Friend in reaction to Friend spitting on him. The jury found Mooney guilty on both counts.

## D. Sentencing

In its Presentence Report (PSR), the Probation Department calculated a base offense level of 14. It proposed, among other enhancements, a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice. This was based on two allegedly false statements during Mooney's trial testimony—his claim that Friend had spit on him before each round of punches, and his claim that Sergeant Stansberry had instructed him to pepper spray Friend.

Mooney's total offense level was determined to be 33. After reviewing Mooney's criminal history, the Probation Department recommended a criminal-history category of I. The resulting Guidelines range was calculated to be between 135 and 168 months of imprisonment.

Mooney was sentenced in March 2024. He had several pending objections to the PSR, but only his objection to the obstruction-of-justice enhancement is relevant to the present appeal. Mooney denied that the statements that were the basis of that enhancement were perjurious. The district court explained that it needed to find only one of the statements perjurious in order to

apply the enhancement. With this in mind, it declined to make a finding of whether Mooney's statement about spitting constituted perjury. Instead, the court noted that "Mr. Mooney indicated that he was instructed to pepper spray Mr. Friend, and that's obstruction of justice." The court then overruled Mooney's other objections and found that the appropriate Guidelines range was 135 to 168 months of imprisonment.

It then continued the sentencing hearing and heard arguments from both sides, a statement from Mooney, and a statement from Friend's father. The government recommended a prison sentence of 135 months. In contrast, Mooney asked for home confinement or a split sentence. After reviewing the 18 U.S.C. § 3553(a) factors, the district court varied downward and sentenced Mooney to 100 months of imprisonment. This timely appeal followed.

## II. ANALYSIS

### A. Sufficiency of the evidence

Mooney first challenges the sufficiency of the evidence supporting his conviction. At trial, he moved for a judgment of acquittal twice—once at the close of the government's case-in-chief and again at the close of all the evidence. The district court denied both motions.

We review a district court's refusal to grant a motion for a judgment of acquittal de novo. *United States v. Howard*, 947 F.3d 936, 947 (6th Cir. 2020). A defendant challenging the sufficiency of the evidence "must surmount a demanding legal standard." *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). We inquire whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In doing so, we "draw all reasonable inferences in support of the jury's verdict and will reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (internal quotation marks omitted) (quoting *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010)). And we "do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

To establish a violation of 18 U.S.C. § 242, the government was required to prove beyond a reasonable doubt that Mooney acted "(1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." *United States v. Lanier*, 520 U.S. 259, 264 (1997) (quoting 18 U.S.C. § 242).  At issue in the present case is whether any rational trier of fact could have found beyond a reasonable doubt that Mooney acted willfully to deprive Friend of his constitutional rights.

Mooney argues that no rational trier of fact could have found the intent required to establish a violation of 18 U.S.C. § 242.  But the government offered ample evidence from which a rational juror could find that Mooney's actions were willful.  First, there was evidence that Mooney understood his legal duty.  He testified that he understood from his training that the use of force must be "in response to a specific threat," and that he was permitted to use only the minimum amount of force necessary to effectively respond.  Mooney also testified that using pepper spray and punching someone in the face were each a use of force that can be used only if a person presented a specific threat, and that, once the threat ended, he must cease the use of pepper spray.  Based on this testimony, Mooney knew all of this on the date of his interaction with Friend.  Finally, there is no dispute that Mooney used pepper spray and punched Friend while Friend was strapped to a restraint chair.

The government presented the testimony of six other deputies about their police training. The jury heard testimony that the use of force must be proportional to the amount of resistance; that the deputies were taught to use de-escalation tactics or a spit hood in response to a restrained person who was spitting at a law-enforcement officer; and that the Pike County Sheriff's Office had a policy that no further use of force should be applied to an inmate once he was in a restraint chair.  The jurors also heard testimony about and saw surveillance footage of Mooney's use of force, including two rounds of pepper spray and three rounds of punching that spanned around 37 minutes of time.

Mooney's arguments that he did not receive specific training on the use of pepper spray and that he struck Friend in reaction to Friend spitting on him do not compel a finding of insufficient evidence.  The government presented testimony showing that even if both of these facts were true, Mooney's use of force was still unjustified.  Viewed in the light most favorable

to the government, the record contains substantial and competent evidence—Mooney's testimony, the deputies' testimony, and video evidence—that was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Mooney acted willfully under color of law to deprive Friend of his constitutional rights.

**B.  The district court's evidentiary findings were not error**

Mooney next presents two evidentiary issues on appeal.  Specifically, he challenges (1) testimony from Deputy Jonathan Chandler that he argues contained a legal conclusion, and (2) the district court's denial of Mooney's request to admit evidence that Friend had Hepatitis C.

### 1.  *Chandler as a government witness*

Mooney did not object to Chandler's testimony at trial, so our review of this evidentiary issue is limited by the plain-error standard.  *See United States v. Wilder*, 87 F.4th 816, 820 (6th Cir. 2023).  Under this standard, Mooney must show (1) error (2) that was obvious or clear (3) that affected his substantial rights and (4) that affected the fairness integrity, or public reputation of the judicial proceedings.  *See id.*  We interpret Mooney's briefs to raise two arguments on this point.  The first is that Chandler's testimony was an improper lay opinion because it required specialized knowledge and therefore violated Rule 701 of the Federal Rules of Evidence.  Second, that this specialized opinion testimony contained a legal conclusion that was inadmissible because Chandler was not identified as an expert witness under Rule 702 of the Federal Rules of Evidence.  We agree with the government that Chandler's testimony was not an opinion and therefore did not violate either Rule.

Rule 701 permits lay-opinion testimony where it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  *United States v. Ahmed*, 472 F.3d 427, 434 (6th Cir. 2006) (quoting Fed. R. Evid. 701).  "The problem with testimony containing a legal conclusion is in conveying the witness'[s] unexpressed, and perhaps erroneous, legal standards to the jury. This invades the province of the court to determine the applicable law and to instruct the jury as to that law."  *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (cleaned up).

But this legal-conclusion prohibition must be balanced with Rule 704(a) of the Federal Rules of Evidence, which provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." We thus "accord a relatively wide degree of discretion in admitting or excluding testimony which arguably contains a legal conclusion . . . because it is often difficult to determine whether a legal conclusion is implicated in the testimony." *Ahmed*, 472 F.3d at 434 (quoting *Torres*, 758 F.2d at 150).

Chandler's testimony did not constitute an opinion by embracing the ultimate issue because he limited his testimony to the facts. The government asked Chandler, "based on what you're taught at that training, are law enforcement officers allowed to use force to punish someone," and further asked whether "officers [are] allowed to use force because someone is annoying them." He responded that officers were not permitted to use force in either of these scenarios. When the government asked why, Chandler stated that he was taught that doing so was a violation of the person's civil rights.

Chandler did not testify that Mooney's actions were a violation of Friend's constitutional rights or opine on the reasonableness or willfulness of Mooney's actions. Instead, Chandler's testimony was based on his personal experience about what he was taught at training. Chandler did not assert that using force to punish someone or against someone who annoyed him were violations of that person's civil rights. He testified only that he was taught these principles during basic training.

Mooney's argument that this case is similar to *United States v. Dukes*, 779 F. App'x 332 (6th Cir. 2019), is unpersuasive. In *Dukes*, this court concluded that a witness's testimony came close to being impermissible when the witness, who was a former police officer and lawyer, explained that he taught the defendant (a fellow officer) the requirements for making a warrantless search and explained how those requirements applied to the defendant's actions. *Id.* at 336. Here, Chandler did not apply his training to the facts, but instead explained what he was taught at the police academy. Because his testimony did not involve an opinion at all, but only facts about what he learned during basic training, this was not improper lay-opinion testimony in violation of Rule 701, nor did it need to be disclosed as expert opinion testimony under Rule

702.  Under these circumstances, we cannot say that the district court plainly erred by allowing Chandler to testify about his experience at basic training.

### *2. Hepatitis C evidence*

We now turn to Mooney's argument regarding the exclusion of the Hepatitis C evidence. A district court's evidentiary decisions are generally reviewed under the abuse-of-discretion standard, but legal conclusions are reviewed de novo. *United States v. Matthews*, 31 F.4th 436, 452 (6th Cir. 2022).  The government argues that although Mooney objected to the evidentiary ruling, he did not frame it as a constitutional argument, so our review should be under the plain-error standard.  The defense argued that, "[f]or a complete picture, and for a complete defense, Mr. Mooney should be allowed to introduce evidence of what he knew about [Friend] prior to this incident that directly affected Mr. Mooney's conduct and state of mind."  We need not decide whether this was sufficient to preserve a claim that his constitutional rights were at stake. Even assuming that Mooney preserved the argument, he does not prevail.

The Constitution guarantees the accused "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  But the right to present a complete defense is not absolute. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").  The exclusion of evidence in a criminal trial "abridge[s] an accused's right to present a defense" only where the exclusion is "'arbitrary' or 'disproportionate to the purpose[ ] [it is] designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)); *United States v. Reynolds*, 86 F.4th 332, 351 (6th Cir. 2023). The exclusion of evidence is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308.

Mooney argues that the district court's decision to exclude evidence that Friend had Hepatitis C deprived Mooney of an opportunity to present a full defense.  He contends that this evidence would have demonstrated that his actions against Friend were not "willful," but rather

an emotional reaction to his fear of contracting Hepatitis C after Friend spit on him. But the district court's exclusion of this evidence was not arbitrary or disproportionate.

First, the district court properly evaluated the relevance of this evidence, stating that there would have "to be some ability to show that this information would make a provable fact more likely or less likely, and I don't think I get past that issue." Mooney contends that Friend's Hepatitis C would make the fact of Mooney's willfulness less likely because Mooney's actions would have been emotional as opposed to intentional. But whether his reaction was emotional and thus, as he argues, "not designed" is irrelevant to whether he acted willfully in this case. The district court instructed the jury that "[a] person acts 'willfully' if he acts voluntarily and intentionally, with the specific intent to do something the law forbids." The court continued by explaining that it was "not necessary" for the jury to "find that the defendant knew the specific constitutional provision or federal law that his conduct violated." Instead, the court instructed that "[i]t is enough that the federal right is clearly defined and the defendant intended to invade interests protected by the Constitution or federal law." The court also explained that "a person may be said to act willfully if he or she acts in open defiance or reckless disregard of a known and definite federal right." Mooney did not object to this definition of "willfully" in the instructions, nor does he challenge that instruction on appeal. Mooney's alleged fear of contracting Hepatitis C therefore does not make his willfulness any more or less likely.

Second, the district court evaluated the evidence under Rule 403 of the Federal Rules of Evidence. The court found that there was the potential for unfair prejudice "in the sense that hep C is associated with intravenous drug usage." Accordingly, it found that this evidence did not pass the balancing test under Rule 403. We acknowledge Mooney's point that the court did not state that this potential prejudice "substantially outweighs" its arguable relevance, but a finding that evidence is not relevant is sufficient to exclude it. Further, although the court did not state that the potential prejudice substantially outweighed any probative value, the court did say that the evidence "doesn't pass the 403 balancing test." This conclusion, coupled with the court's finding that there was no relevance, is sufficient to sustain its ruling.

**C. The district court did not err in denying Mooney's motion to dismiss the indictment**

We next address Mooney's argument regarding his indictment. Mooney's motion to dismiss the indictment contended that the government violated the Fifth Amendment by destroying materially exculpatory evidence in bad faith. He argues that the deleted video showing the entirety of Friend's time in the Pike County Sheriff's Office likely contained exculpatory evidence because it would have shown Friend's aggressive behavior towards Mooney.

We review de novo a district court's decision to deny a motion to dismiss an indictment because of the destruction of potentially exculpatory evidence. *United States v. Spalding*, 438 F. App'x 464, 466 (6th Cir. 2011) (citing *United States v. Jobson*, 102 F.3d 214, 217 (6th Cir. 1996)). "The Due Process Clause prohibits the government from destroying evidence in a criminal case under specific circumstances." *United States v. Folad*, 877 F.3d 250, 253 (6th Cir. 2017). A key question is whether "the evidence was (1) apparently exculpatory at the time it was destroyed or (2) only 'potentially useful' at the time it was destroyed." *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988)). The government violates a defendant's due process rights when it fails to preserve evidently exculpatory evidence and the evidence is of a nature where the defendant would be unable to obtain comparable evidence by other reasonably available means, regardless of whether the government acted in bad faith. *Trombetta*, 467 U.S. at 488–89. When the evidence destroyed was only "potentially useful," however, the defendant must show that the government acted in bad faith in failing to preserve it. *Youngblood*, 488 U.S. at 58.

There is little reason to believe that the deleted video in question had "an exculpatory value that was apparent before the evidence was destroyed." *See Trombetta,* 467 U.S. at 489. Dispatch Supervisor Bickers testified that he reviewed the entire Friend-related video and downloaded the portions relevant to the use of force. He explained that the remainder of the video showed Mooney doing administrative tasks or standing around, with Friend spinning himself in the restraint chair. And although Mooney claims that the video would undermine a finding of willfulness by showing that Friend was behaving aggressively towards Mooney, that Mooney took action to diffuse the situation, and that Mooney helped Friend clean up after the

pepper spray, none of these factual circumstances, even if true, are likely to be exculpatory. *See Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("[A]s we have previously held, striking a neutralized suspect who is secured by handcuffs is objectively unreasonable."). Accordingly, the district court did not err in denying Mooney's motion to dismiss.

Mooney has also not shown a violation of his due process rights because the video was only potentially useful, and he did not demonstrate that it was erased in bad faith. There is no evidence that anyone in the Pike County Sheriff's Office even suspected that the tape was exculpatory, and the remainder of the tape was erased as part of routine policy. *See Jobson*, 102 F.3d at 218. Bickers, who reviewed all of the video footage showing Friend, testified that he did not know about the office's policy of erasing tapes. His testimony is clear that he did not extract the entirety of the tape because he was instructed to pull footage only of the use of force and because the entirety of the tape would have been too large to download.

**D. The district court erred in applying the obstruction-of-justice enhancement**

Mooney's final argument is that the district court failed to make sufficient findings for an obstruction-of-justice enhancement and therefore improperly imposed the enhancement pursuant to U.S.S.G. § 3C1.1. Due to this failure, Mooney contends that resentencing is necessary. We agree.

### 1. Standard of review

In general, the question of "whether specific facts actually constitute an obstruction of justice is a mixed question of fact and law that we review de novo." *United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012). But the government argues that we should review this claim under the plain-error standard because it was not preserved. The government, however, does not argue that Mooney's objection was so inadequate that the district court had no obligation to make factual findings regarding perjury. Mooney in fact did object to the enhancement for alleged perjury based on his testimony that Friend spit on him before each round of punching and his testimony that Stansberry had ordered him to pepper spray Friend.

The dissent interprets both Mooney's written objections to the PSR and his objections during the sentencing hearing as concerning only the spitting incidents. The PSR stated:

> The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice. According to trial testimony, Mr. Mooney made multiple false statements during his trial. First, Mooney stated that he was instructed by Mr. Stansberry to pepper spray Mr. Friend. There is no evidence to support this claim. Mr. Mooney also stated that he punched Mr. Friend in the head because he spit on him; however, video evidence disputed this statement. The video revealed that Mr. Mooney was spit on after the second set of punches was delivered.

And Mooney's objection letter stated:

> Mr. Mooney objects to a 2-level enhancement under U.S.S.G. § 3C1.1 for Obstruction of Justice. A 2-level enhancement is being sought against Mr. Mooney due to his testimony at trial. Probation notes that the video does not support testimony that Mr. Mooney gave at trial. However, as this Court is aware numerous pieces of video were not preserved and are missing. . . . It should not be imposed.

With this context in mind, Mooney's letter clearly objects to the enhancement in general and then addresses the specific evidentiary argument that the PSR makes regarding the video evidence that allegedly counters Mooney's statement about Friend's spitting. *Id.* His written objection does not support the inference that he was dropping the PSR's discussion regarding Stansberry, but instead supports the inference that he was mirroring the PSR's discussion on both points. Mooney's objection at the hearing further supports this view because, when the district court directed defense counsel to address the allegation of perjury regarding Stansberry's alleged instruction to pepper spray Friend, defense counsel stated that "I would not agree that there was perjury. I understand the Court has a lesser standard [and] the Court can make a finding, but we would just note our objection." We are satisfied that this constitutes an adequate objection to the enhancement based on Mooney's allegedly perjurious statement.

The dissent, however, contends that Mooney's objection was insufficient, and it relies on several cases in this circuit that require more than a "bare denial." Dissent at 21. But these cases do not involve a sentencing enhancement based on trial testimony. They instead involve the question of when a district court must make factual findings under Rule 32(i) of the Federal

Rules of Criminal Procedure because the defendant adequately disputed the PSR's factual findings regarding other enhancements. *See* Fed. R. Crim. P. 32(i)(3) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact," but "must— for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing"); *see also United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021) (requiring more than a "bare denial" to put a PSR's factual finding in dispute for purposes of Rule 32(i)); *United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015) (same).

These cases are not relevant here, where Mooney objected to the sentencing enhancement based on trial testimony. Instead, the Supreme Court has emphasized that the district court's obligation to make factual findings for a sentencing enhancement resulting from trial testimony is based on the need to protect the defendant's constitutional right to testify. In *United States v. Dunnigan*, 507 U.S. 87 (1993), the Supreme Court held that "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." *Id.* at 95. *Dunnigan* does not require that a defendant dispute a factual finding made by the PSR; it requires only that a defendant object to the specific sentencing enhancement that results from trial testimony. Mooney clearly objected to the enhancement resulting from his trial testimony, so the district court was obligated to make the findings necessary under the perjury definition.

In any case, the government does not argue that Mooney's objection was so inadequate that the district court had no obligation to make the factual findings regarding perjury. *See United States v. Beard*, No. 22-3398, 2023 WL 4230048, at *4 (6th Cir. May 22, 2023) (holding that an argument not made in the opening appellate brief was waived or forfeited). Instead, the government contends that Mooney's objection was insufficient because he did not further object to the adequacy of the court's factual findings once made. We disagree. *See United States v. Miller*, 161 F.3d 977, 984 (6th Cir. 1998) (holding that an issue regarding whether an enhancement applies was preserved where counsel timely objected to the enhancement).

The government relies on several out-of-circuit cases holding that an attorney's objection "to the general principle of the enhancement," but not "to the findings of fact the judge made during the sentencing hearing," warrants plain-error review. *See United States v. Holman*, 314 F.3d 837, 846 (7th Cir. 2002); *see also United States v. Katzin*, 707 F. App'x 116, 123–24 (3d Cir. 2017); *United States v. Flonnory*, 630 F.3d 1280, 1288 (10th Cir. 2011); *United States v. Flores*, 281 F.3d 1279 (5th Cir. 2001). In effect, the government is asking us to not only require that a defendant timely object to a sentencing enhancement, thus requiring the district court to make the factual findings necessary to apply the enhancement, but to also require a defendant to object to the sufficiency of the factual findings once the district court makes those findings.

The government, however, is unable to cite any case in this circuit that requires such a level of specificity or repetitiveness for objections to a sentencing enhancement. Instead, our court has held that sentencing issues are preserved when a defendant objects with a "reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004); *see also United States v. Vonner*, 516 F.3d 382, 390 (6th Cir. 2008) (holding that neither party "in response to the Bostic question, has any obligation to raise objections already made.").

On the other hand, the dissent relies on *United States v. O'Lear*, 90 F.4th 519 (6th Cir. 2024), and *United States v. Lanier*, No. 21-5619, 2023 WL 4963190 (6th Cir. Jan. 8, 2024), to argue that Mooney should have objected to the sufficiency of the district court's factual findings. Dissent at 22. But neither of these cases is relevant here. *O'Lear* involved a defendant who did not object to the enhancement's imposition at all. *Id.* at 534–35. Mooney, at the very least, objected to the imposition of the obstruction-of-justice enhancement, which puts this case on a materially different footing from *O'Lear*. The dissent's reliance on *Lanier* is similarly misplaced. *Lanier* involved the application of the factors under 18 U.S.C. § 3553(a), where a district court is under an obligation to meaningfully consider a defendant's arguments, *see Lanier*, 2023 WL 4963190, at *11, and not in the context of the obstruction-of-justice enhancement, where the district court is under a duty to make factual findings regarding perjury. We will therefore review this issue de novo.

A district court may apply the obstruction-of-justice enhancement if it finds by a preponderance of the evidence that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. A criminal defendant's perjury in his own trial can be grounds to enhance his sentence for obstruction of justice, but to do so, the district court must satisfy the following two requirements: "first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Roberts*, 919 F.3d 980, 990 (6th Cir. 2019) (quoting *United States v. Sassannelli*, 118 F.3d 495, 501 (6th Cir. 1997)). A finding of perjury for the purposes of the obstruction-of-justice enhancement is sufficient if the court determines that "the defendant was untruthful at trial with respect to material matters in this case" and that the "untruthful testimony on material matters was designed to substantially affect the outcome of the case." *United States v. Chance*, 306 F.3d 356, 390 (6th Cir. 2002) (emphasis and internal quotation marks omitted) (quoting *Dunnigan*, 507 U.S. at 95).

The district court failed to fulfill the second requirement in applying the obstruction-of-justice enhancement because it did not make independent findings regarding each of the elements of perjury. *See Sassannelli*, 118 F.3d at 501. Instead, the court simply stated: "Mr. Mooney indicated that he was instructed to pepper spray Mr. Friend, and that's obstruction of justice." Although the court adequately identified the portion of Mooney's trial testimony—his statement at trial that he was instructed to pepper spray Friend—that it considered to be an obstruction of justice, it did not even mention the word "perjury," let alone make a factual finding that Mooney committed perjury. Particularly problematic is the court's lack of any finding on the materiality of this statement, especially where Mooney's allegedly false statement was not "obviously material" to the charge of depriving Friend of his civil rights. *See O'Lear*, 90 F.4th at 535.

Despite the government's arguments, there are no inferences available for us, without more, to affirm the district court's application of the enhancement. "The district court may not rely solely on the jury's verdict in applying an obstruction enhancement for perjury." *Chance*,

306 F.3d at 389–390. It must instead review the evidence and make independent findings necessary to establish a willful obstruction of justice. *Id.* at 390. "Nor will we neglect *Dunnigan*'s independent-finding mandate, affirming 'on an inference that [an] enhancement was based upon the government's arguments.'" *Id.* (quoting *United States v. McRae*, 156 F.3d 708, 713 (6th Cir. 1998)).

The government's argument that it fully outlined Mooney's perjurious statements to the district court, that the record below was sufficiently clear, and that the court was present for both Mooney's and Stansberry's conflicting testimonies are not bases to affirm the court's application of the enhancement. *See, e.g.*, *Roberts*, 919 F.3d at 991 (holding that the district court's statement that "[t]he Court makes a specific finding that the defendant testified falsely" was insufficient to constitute an independent factual finding of perjury); *see also United States v. Warner*, 646 F. App'x 478, 480 (6th Cir. 2016) (vacating the defendant's sentence where the district court did not make a factual finding of perjury). Accordingly, we must vacate the obstruction enhancement and remand to the district court to either resentence Mooney or make the required factual findings regarding the enhancement. *See Roberts*, 919 F.3d at 991.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Mooney's conviction, but **VACATE** his sentence and **REMAND** the case for further proceedings with regard to the enhancement for obstruction of justice.

—————————————————

**CONCURRENCE / DISSENT**

—————————————————

LARSEN, Circuit Judge, concurring in part and dissenting in part. The majority opinion affirms most of the district court's judgment, and I agree with its reasons for doing so. I disagree, however, that Mooney adequately preserved his objection to the obstruction-of-justice enhancement. So I would review Mooney's challenge to that enhancement for plain error. Applying that standard, I would affirm the district court's imposition of the enhancement rather than vacating and remanding. Accordingly, I concur in all but Part II.D of the majority opinion, from which I respectfully dissent.

To preserve an error, a party "must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (quotation omitted). That means that the challenging party must provide a "'clear articulation of any objection and the grounds therefor,' to 'aid the district court in correcting any error, tell the appellate court precisely which objections have been preserved and which have been [forfeited], and enable the appellate court to apply the proper standard of review to those preserved.'" *United States v. Golson*, 95 F.4th 456, 460 (6th Cir. 2024) (quoting *Bostic*, 371 F.3d at 873) (alteration in original). Mooney's objections failed to meet *Bostic*'s specificity requirement.

On appeal, Mooney makes two claims. First, he contends that the district court failed to identify the statements it considered perjurious. The majority rightly rejects that claim. Second, he contends that the district court failed to make adequate findings about each element of perjury—that the defendant (a) willfully, (b) made a false sworn statement, (c) on an issue "material" to the case. *United States v Dunnigan*, 507 U.S. 87, 94 (1993). But neither Mooney's written objections to the PSR, nor his oral objections at sentencing, alerted the district court to the need to make more specific factual findings.

The PSR recommended an obstruction-of-justice enhancement based on two statements Mooney made at trial: (1) that Friend spat on Mooney repeatedly and (2) that Officer Stansberry

instructed Mooney to pepper spray Friend.  The district court based its obstruction enhancement on the second statement alone.  But Mooney's written objections to the PSR concerned only the first allegation—that Mooney had lied about Friend's repeated spitting.  The objection letter stated the following:

> Mr. Mooney objects to a 2-level enhancement under U.S.S.G. § 3C1.1 for Obstruction of Justice.  A 2-level enhancement is being sought against Mr. Mooney due to his testimony at trial.  Probation notes that the video does not support testimony that Mr. Mooney gave at trial.  However, as this Court is aware numerous pieces of video were not preserved and are missing.  Additionally, the way that the individuals are positioned in the video can at times block observation of their actions. . . . the application of this enhancement is effectively punishing him for exercising his constitutional right to a jury trial.  It should not be imposed.

R. 87-1, PageID 728–30.  Defense counsel reiterated these objections at sentencing, arguing that the camera angle could not have captured the spitting and that there was no "factual finding that there was perjury" as it pertained to the spitting claim.  R. 117, Sentencing Tr., PageID 1729.

The discussion of the video evidence is irrelevant, however, to the obstruction enhancement as it relates to the claim that Stansberry directed Mooney to pepper spray Friend.  All parties concede that the video evidence did not have audio, so no one could have heard whether Stansberry directed Friend to use pepper spray.  So Mooney's exclusive focus on the video evidence would not have put the district court on notice that there was any objection at all to an obstruction finding based on Stansberry's alleged instructions to Mooney.

At the sentencing hearing, however, the court directed the parties to address the other obstruction ground raised in the PSR—whether Mooney had "committed perjury regarding Mr. Stansberry's instructions."  *Id.* at 1730.  The government noted that neither defense counsel's statements at the hearing nor the written objections to the PSR had "dispute[d] the finding" of perjury on that ground.  *Id.*  Defense counsel's only response was to note that both witnesses "had motivations" before resuming discussion of the irrelevant video evidence.  *Id.*  Counsel then concluded, saying:  "I would not agree that there was perjury.  I understand the Court has a lesser standard the Court can make a finding, but we would just note our objection."  *Id.* at 1731; *see also id.* at 1730 ("I have no evidence that [Mooney] did commit perjury, so we're not stipulating to that.").

That conclusory statement was not a "clear articulation of . . . the *grounds*" for any objection to an obstruction enhancement based on the pepper-spray instruction. *Golson*, 95 F.4th at 460 (emphasis added). Our cases routinely require more than a "bare denial" that an enhancement applies. *See United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021) (holding that a "bare denial" of the PSR's factual conclusions does not preserve a claim of error); *United States v. Cover*, 800 F.3d 275, 278 (6th Cir. 2015) (same). Instead, we require a defendant to "specifically highlight[] reasons he thought the enhancement . . . did not apply." *United States v. Manns*, 690 F. App'x 347, 351 (6th Cir. 2017).

The majority claims that reliance on PSR objection cases is unfounded because those cases did not deal with a "sentencing enhancement based on trial testimony." Maj. Op at 18. This is a puzzling rejoinder because Mooney's "bare denial" was offered in direct response to the PSR's finding that the obstruction enhancement should apply because "Mr. Mooney made multiple false statements" in his "trial testimony." R. 84, PageID 556, 560. But, in any event, the specificity requirement applies beyond objections to a PSR. *Manns* did not involve an objection to a PSR. *See* 690 F. App'x at 351. Neither did *Bostic*, which the majority rightly credits with articulating the standard: "sentencing issues are preserved when a defendant objects with a 'reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection.'" Maj. Op at 20 (quoting *Bostic*, 371 F.3d at 871). And we have frequently applied the specificity principle to prevent defendants from raising on appeal objections to sentencing enhancements not adequately presented to the trial court. *See, e.g.*, *Golson*, 95 F.4th at 460–61 (defendant's objection to a reckless endangerment enhancement that he was running from law enforcement and did not discharge a firearm did not preserve a challenge on appeal to his status as a passenger in the vehicle that committed the crime); *United States v. Hazelwood*, 398 F.3d 792, 798 (6th Cir. 2005) (defendant's objection to a criminal history enhancement that a prior crime "did not involve any jail time" did not preserve argument on appeal that the prior crime was not a felony); *United States v. Presley*, 18 F.4th 899, 903–04 (6th Cir. 2021) (defendant's objection that he should only have an enhanced offense level of 16 did not preserve argument on appeal that the government went "beyond the sentencing stipulations in [a] plea agreement"); *United States v. Kelsey*, 2024 WL 33226022, at *4 (6th Cir. July 8, 2024) (defense counsel's comments that government came "pretty close" to violating a

plea agreement by imposing an obstruction of justice enhancement did not preserve a breach claim on appeal).

What's more, Mooney's "empty objection" to the enhancement, *Manns*, 690 F. App'x at 351, came *before* the district court made any obstruction finding at all. So it could not have alerted the district court that its *later* conclusion did not comply with the Supreme Court's command that it either make specific findings on each element of perjury or a finding "encompass[ing] all of" perjury's "factual predicates." *Dunnigan*, 507 U.S. at 95.

This court routinely applies plain error review when a party fails to object to a district court's inadequate factual findings or explanations. *See, e.g.*, *United States v. Simmons*, 587 F.3d 348, 354 (6th Cir. 2009); *United States v. Harmon*, 607 F.3d 233, 237 (6th Cir. 2010) (same); *United States v. Lanier*, 2023 WL 4963190, at *4 (6th Cir. Aug. 3, 2023) (same). And that is particularly so when, as here, the defendant remains silent in response to the *Bostic* question. *See Bostic*, 371 F.3d at 871 (requiring district courts to "ask the parties whether they have any objections to the sentence . . . that have not previously been raised"). As we explained in *Simmons*, the *Bostic* question is "especially pertinent" in cases like this one, "that concern the adequacy of the court's explanation." 587 F.3d at 354. That's because "such objections cannot be made until after the court states its reasoning in the course of sentencing the defendant." *Id.*

In *United States v. Lanier*, for example, the defendant challenged the district court's application of the sentencing factors under 18 U.S.C. § 3553 but did not engage in "any extended analysis." 2023 WL 4963190, at *3. On appeal, Lanier argued in part "that the district court failed to adequately explain its reasoning" under § 3553 "rendering the sentence procedurally unreasonable." *Id.* at *10. We held that Lanier had not preserved his procedural unreasonableness argument. We explained that "[h]is earlier filings, and their objections" did "not extend to the adequacy of the court's explanation, because the explanation had not yet occurred." *Id.* We thus applied plain error review. *Id.*; *see also United States v. O'Lear*, 90 F.4th 519, 534–35 (6th Cir. 2024) (applying plain error when a defendant's attempted objection did not mention the relevant guideline enhancement and "failed to 'alert' the court that it needed to make the findings" required by *Dunnigan* and our cases following it). As in these cases, Mooney never objected that the district court's perjury finding was not specific enough to

comply with *Dunnigan*. Counsel never claimed, for example, that the district court had failed to find that Mooney's false statements were willfully made or that they were material. And counsel remained silent even after the district court asked the *Bostic* question, whose very purpose is to provide defendants a clear point at which to make their objections. *Simmons*, 587 F.3d at 354.

In sum, defense counsel's generic objection that she "would not agree that there was perjury" "failed to 'alert' the court that it needed to make the findings that our cases require when a defendant objects" to an enhancement based on perjury. *O'Lear*, 90 F.4th at 535 (citation omitted). Mooney's objection thus did not "aid the district court in correcting any error" concerning its factual findings. *Bostic*, 371 F.3d at 873. So plain error review should apply. To my knowledge, every other circuit to have addressed this question agrees. *See United States v. Holman*, 314 F.3d 837, 846 (7th Cir. 2002); *United States v. Flonnory*, 630 F.3d 1280, 1288 (10th Cir. 2011); *United States v. Flores*, 281 F.3d 1279 (5th Cir. 2001); *United States v. Macias*, 927 F.3d 985, 990 (9th Cir. 2019); *United States v. Katzin*, 707 F. App'x 116, 123–24 (3d Cir. 2017); *United States v. Martinez*, 547 F. App'x 559, 563 (5th Cir. 2013).

\* \* \*

Under plain error review, Mooney's challenge to the obstruction enhancement fails. To show plain error, Mooney must "identify an (1) error (2) that was obvious or clear, (3) that affected his substantial rights." *Presley*, 18 F.4th at 904. If he satisfies those three prongs, then we may remedy the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

The "bar for plain error is extremely high and overcome 'only in exceptional circumstances.'" *United States v. Johnson*, 627 F.3d 578, 586 (6th Cir. 2010) (cleaned up) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)). For an error to be clear and obvious it must be "so plain that the trial judge" was "derelict in countenancing it." *Vonner*, 516 F.3d at 386. If there is "an arguable [] question" then the error "cannot qualify as 'clear or obvious.'" *United States v. Simmonds*, 62 F.4th 961, 967 (6th Cir. 2023) (quoting *Puckett v. United States*, 556 U.S. 129, 143 (2009)).

Under our precedent, any error was not plain.  Our opinion in *O'Lear*, which is binding on both us and the district court, held that a district court does not commit "an obvious error" if it "fail[s] to make the specific findings required" by *Dunnigan* "when the defendant does 'not place[]' the court 'on notice of the need' for them." *O'Lear*, 90 F.4th at 535 (noting the "caveat" in the caselaw "that courts must make these findings when 'a defendant *objects*' to the enhancement—not when the defendant says nothing about it").  That's the case here where Mooney offered only an "empty objection" to the enhancement and said nothing about the district court's alleged failure to make the *Dunnigan* findings.  The district court thus did not plainly err.

In any event, it was Mooney's burden to show that his testimony claiming that Stansberry directed him to pepper spray Friend was immaterial to the case such that imposing the enhancement would amount to plain error.  *See Greer v. United States*, 593 U.S. 503, 508 (2021) ("The defendant has 'the burden of establishing entitlement to relief for plain error.'").  During his trial, Mooney argued the opposite.  Mooney repeatedly pointed to the alleged pepper spray instructions to argue that he lacked the requisite mens rea, *i.e.*, that his behavior was not willful.  Whether or not that argument was legally correct, Mooney has made little attempt to argue in this court that his extensive testimony regarding these purported instructions was actually irrelevant or not designed to affect the outcome of the case.  He has thus failed to carry his burden of showing that the district court committed a clear and obvious error.  *Vonner*, 516 F.3d at 386.

In sum, I would apply plain error review and affirm the district court's application of the obstruction enhancement.  I therefore concur in all but Part II.D of the majority's opinion, from which I respectfully dissent.